A. D. PUGH, Appellee, v. CITY OF DES MOINES et al.,
Appellants.

MUNICIPAL CORPORATIONS: Streets, Etc.—Obstructions—Power
1   to Prohibit—Parking Automobiles. Any private use of a public
    street which in any degree prevents its free use as a public way
    "from side to side and end to end" is a nuisance and may be
    prohibited by the municipality. (Secs. 753, 755 and 5078, Code,
    1897.) Therefore, held that a city may, as to some streets, abso-
    lutely prohibit vehicles from standing thereon (except for a lim-
    ited period for unloading), and as to the other streets may pro-
    hibit such vehicles from standing thereon for a period exceeding
    one hour.

MUNICIPAL CORPORATIONS: Powers—Penalizing That Which
2   State Law Penalizes. The imposition by a municipality of a
    penalty for obstructing its public streets in violation of an ordi-
    nance, does not contravene the state law which prescribes simi-
    lar, though greater, penalties for like obstructions.

MUNICIPAL CORPORATIONS: Streets, Etc.—Private Use—Park-
3   ing Automobiles. "No one can make a stable yard of the king's
    highway" was written a hundred years ago. The modern and
    revised version is: "No one may make a private garage of a
    public street."

MUNICIPAL CORPORATIONS: Streets, Etc.—Regulation and Con-
4   trol—Effect of Automobile Act. The right and duty of the munici-
    pality to keep the public streets free of nuisances, such, for in-
    stance, as standing automobiles, is not lessened by the provisions
    of the Automobile Act (Chap. 2-B, Title VIII, Code Supp., 1913)
    providing that no one shall leave an automobile standing (1)
    upon a public street in the business district within 20 feet of a
    street corner or a hydrant, unless attended by someone capable
    of driving the same, (2) within 15 feet of either side of theaters,
    etc., (3) on the public street and unattended, with the machinery

in motion; such latter provisions being *positive* directions from the state and working no limitation on the non-conflicting *permissive* powers heretofore granted and now existing on the part of municipalities, under Secs. 753, 755, Code, 1897.

**MUNICIPAL CORPORATIONS: Streets, Etc.—''Free Use by Automobiles''—Statute—Construction.** The provision of the Automobile Act (Chap. 2-B, Title VIII, Code Supp., 1913) that municipalities may not exclude the owner of an automobile from the free use thereof on the public highway simply means that such owner shall have the free use of the public highways *for the purposes for which highways are primarily dedicated.*

*Appeal from Polk District Court.*—HUBERT UTTERBACK, Judge.

TUESDAY, MARCH 14, 1916.

REHEARING DENIED WEDNESDAY, JUNE 28, 1916.

ACTION to restrain the city from the enforcement of an ordinance prohibiting the standing of automobiles upon certain of the public streets of Des Moines. Decree for the plaintiff in the court below. Defendants appeal.—*Reversed.*

*H. W. Byers, Eskil C. Carlson* and *Earl M. Steer,* for appellant.

*A. D. Pugh,* for appellee and attorney *pro se.*

GAYNOR, J.—The plaintiff filed the following petition, in which he made the city of Des Moines, the chief of police, the superintendent of public safety, and the police judge of the city, defendants. The petition is substantially as follows:

"Par. 1. The plaintiff is a resident of the city and brings this suit for the benefit of himself and other private automobile owners in said city.

"Par. 2. The defendant is a city of the first class, organized under Chapter 14-C of Title V of the Supplement to the Code, 1913.

"Par. 3. Section 30 of ordinance No. 1594 of said city, as amended, is as follows:

'Section 30. No person shall between the hours of 7:00 o'clock A. M. and 6:30 o'clock P. M., leave standing upon any of the following streets, any vehicle, whether in charge of a driver or not, to wit: West Fifth Street, from Court Avenue to Locust Street; West Sixth Street, from Mulberry Street to Grand Avenue; West Walnut Street, from Third Street to Ninth Street; West Locust Street, from Third Street to Eighth Street; Mulberry Street, from Fifth Street to Seventh Street; West Seventh Street, from Mulberry Street to Grand Avenue. (This section shall not be construed to prohibit vehicles in charge of a driver or other person from standing on said streets for not more than twenty minutes while such vehicle is being loaded or unloaded.)'

"That Section 31 of said ordinance, as amended, is as follows:

'No person shall between the hour of 7:00 o'clock A. M., and 6:30 o'clock P. M., leave standing any vehicle for a longer period than one hour on any of the following streets: West Walnut Street, from the bridge to Third Street; West Locust Street, from the bridge to Third Street, and from Eighth Street to Ninth Street; West Grand Avenue, from Second Street to Ninth Street; West Third Street, from Court Avenue to Grand Avenue; West Fourth Street, from Court Avenue to Grand Avenue; West Fifth Street, from Vine Street to Court Avenue; West Sixth Avenue, from Cherry Street to Mulberry Street; East Walnut Street, from First Street to Sixth Street; East Locust Street, from Fifth Street to Seventh Street; provided, that the council may by ordinance designate portions of the streets named in this section as stands for vehicles used for the transportation of persons or property for hire.'

"That Section 38 of said ordinance is as follows:

" 'Any person violating any of the rules, regulations or

provisions of this ordinance shall be punished by a fine of not less than $1 nor more than $50 and shall stand committed until such fine and costs are paid.'

"The title of said ordinance is as follows:

'An ordinance relating to street traffic and regulating the use of the streets, alleys and public places of the city of Des Moines by street cars, carts, drays, hacking coaches, omnibuses, carriages, wagons, motor vehicles and providing a penalty for violation thereof.'

"That said ordinance, as amended, and as above set forth, in so far as the same is valid has been in force in said city at all times since November 19, 1913, up to the present time.

"Par. 4.   Recites that plaintiff is an attorney at law residing in said city, maintains an office on West Fifth Street between Locust and Walnut Streets; that he is the owner of a private passenger automobile carrying five persons, which is duly licensed and registered and numbered under the state law relating to motor vehicles, for the year 1915, and that he paid the requisite fee therefor; that he uses said automobile in going to and from his office and elsewhere about the said city and country in the practice of his profession; that when said automobile is not so used during business hours it frequently stands on West Fifth Street in the block where plaintiff's office is located; that said automobile was so licensed, so used, and so stood during all of the times hereinafter referred to; and that the use of said automobile is of value to plaintiff.

"Par. 5.   That said sections of said ordinance in so far as they prohibit or restrict the standing in the streets of said city of a private automobile, not used for hire, duly licensed, registered and numbered under the state law, are in excess of the lawful powers of said city, and void; and are also void because unreasonable; and that they are in conflict with Sections 1571-m20 and 1571-m33 of the Supplement to the Code, 1913.

"Par. 6. That, prior to the commencement of this action, plaintiff had been charged with the violation of Section 30. of said ordinance by permitting the same to stand in the street more than twenty minutes; that he was tried upon said charge and acquitted.

"Par. 7. That, notwithstanding said adjudication resulting in his acquittal, he was again charged with violating this section; and was again tried and acquitted.

"Par. 8. That since June 26, 1915, the plaintiff has been five times charged with the violation of said ordinance, and in permitting his automobile to stand on Fifth Street between Locust and Walnut; that these trials have involved him in. loss of time and expense, and great inconvenience, and he has suffered irreparable injury therefrom; that the legal remedy by appeal from repeated criminal charges and convictions is grossly inadequate, and the plaintiff has no plain, speedy and adequate remedy at law except by injunction, and unless the defendant is restrained from enforcing such void provisions of the ordinance.

"Wherefore the plaintiff prays that a writ of injunction issue restraining defendants from enforcing the ordinance in the particulars set forth in the petition, and from in any manner enforcing said judgments therein for violating said ordinance, until the further order of the court, and that said ordinance be declared void."

To this, defendants filed a demurrer, stating the following grounds:

"1. The plaintiff is not entitled to the relief prayed nor to any relief.

"2. The petition on its face shows that the plaintiff is not entitled to the relief prayed nor to any relief.

"3. The petition on its face shows that the court is without jurisdiction to grant the relief prayed or any relief.

"4. The petition on its face shows that the plaintiff has a plain, speedy and adequate remedy at law."

The court overruled this demurrer and granted a writ of temporary injunction, restraining the defendants as prayed in the petition. From this order, the defend-

1. MUNICIPAL COR-
   PORATIONS:
   streets, etc.:
   obstructions:
   power to pro-
   hibit.
ants appeal, and present two propositions for our consideration:

1. That the court of equity has no jurisdiction to grant the relief prayed for.

2. That the power exercised in the passage and adoption of the ordinance was an exercise of the power conferred upon, or delegated to, the city by the state, through its legislature, and, as exercised, does not contravene any of the provisions of Sections 1571-m20 to 1571-m33 of the Supplement to the Code, 1913.

We take up these propositions in their reverse order.

Was there power in the city to pass and adopt the ordinance complained of? This presents two propositions:

1. The right of the city to exercise control over the streets and alleys within its corporate limits and to regulate their use.

2. The right of the citizen to the free and unobstructed use of the streets for unobstructed travel.

Section 753 of the Code of 1897 provides:

"They (meaning cities and towns) shall have the care, supervision and control of all public highways, streets, avenues, alleys, public squares and commons within the city, and shall cause the same to be kept *open . . . and free from nuisances.*"

Section 755 of the same Code provides:

"They shall have power to restrain and regulate the riding and driving of horses, live stock, vehicles and bicycles within the limits of the corporation, and prevent and punish fast or immoderate . . . driving within such limits."

Under these statutes, the care and control of the highways, streets and sidewalks within cities, are committed to the proper governing body of the municipality, to the end that they may secure to the inhabitants and the general public,

the convenient and unobstructed use and enjoyment of those thoroughfares for their appropriate purposes. So the state, through its legislature, has conferred upon cities the right to adopt, in order to promote the order, comfort and convenience of the inhabitants, ordinances that are reasonable and not in conflict with the laws and policies of the state, or in violation of private right.

Separating in our minds, for a moment, the individual from the public as an aggregation, and looking now to the traveling public—those who use and have a right to use the streets and highways for the purposes for which they are set apart—the mind reaches the conclusion, without any confusion of thought, that the public have an untrammeled right to free and unobstructed transit over streets, sidewalks and alleys. This is the primary and appropriate use to which they are generally put; therefore, whatever interferes, unreasonably or unnecessarily, with this use, is a nuisance, which the council may prohibit by ordinance; and so it is made its duty to keep streets and sidewalks open and in repair and free from nuisance, to the end that this right may be secured.

Section 5078 of the Code of 1897 provides:

"The obstructing or encumbering by fences, buildings or otherwise the public roads, private ways, streets, alleys, commons, landing places or burying-grounds, are nuisances."

In *White v. Kent*, 11 O. St. 550, that court said:

"The public have a right of free and unobstructed transit over streets, sidewalks and alleys, and this is the primary and appropriate use to which they are generally dedicated. Whatever interferes, unreasonably and unnecessarily, with this use, is a nuisance, which a city council may well prohibit by ordinance. Individuals have no right to appropriate the sidewalks to the use of their own trade or business, in such manner as to interfere with their public use."

In *Marini v. Graham*, 67 Cal. 130, that court said:

"The sidewalks of a public street of a city are parts of the street. Any obstruction of the sidewalk is, therefore, an

obstruction of the street, and a nuisance; but it is a public nuisance, because it interferes with the free use of the street by the traveling public in general, and not merely some particular person." See *Ex parte Taylor*, 87 Cal. 91; *City of Wilkes-Barre v. Garabed*, 11 Pa. Superior Ct. Rep. 355.

The ordinance in the instant case does not declare the obstruction of the streets by the parking of automobiles upon the streets a nuisance, but proceeds upon the theory that the general law so declares and provides. It simply forbids the obstruction, and declares that such obstruction shall be unlawful. This it does under the exercise of its police power and the authority expressly granted by the statute. It does not contravene the state law prescribing penalties for obstruction of highways. The penalty is not of a different character or in excess of one prescribed by the statute, but is of the same character, only less in degree. In *Commonwealth v. Stodder*, 2 Cush. (Mass.) 562 (48 Am. Dec. 679), it is said:

2. MUNICIPAL CORPORATIONS: powers: penalizing that which state law penalizes.

"We perceive nothing objectionable in an ordinance providing for the safety and convenience of the public generally, by prescribing by a general by-law or ordinance, certain streets or portions of streets to be used for travel by vehicles. . . . Such regulations and restrictions might be warranted even to effect the minor object—that of preventing the greatly obstructing the free and convenient use of the streets for general purposes."

The case of *Vanderhurst v. Tholcke*, 113 Cal. 147 (35 L. R. A. [O. S.] 267) was an action to enjoin the city or its officers from cutting down certain trees standing or growing on a sidewalk in front of plaintiff's premises. The court below found that the trees did not constitute a nuisance, and dismissed the case. On appeal it was said:

"It is contended that the finding that the trees do not constitute an obstruction or nuisance is without competent support, and this is the material question arising, since, with-

out the aid of that finding, the judgment cannot stand. . . .
Under the charter of the city, the common council is given
the general care, custody and control of the streets, with
power to lay out, open, alter, vacate, improve, cleanse and
repair the same. . . . Under this grant of power, there can
be no question that the city authorities can, and it is their
duty to, cause the removal of anything constituting an obstruc-
tion to the streets . . . since anything which is an obstruction
to the free use of a public street constitutes a public nuisance.
. . . It was not essential to the power of the city to remove
the trees that they should completely obstruct the walk or take
up the entire width thereof. The degree of obstruction jus-
tifying their removal is a question for the city. . . . The pub-
lic is entitled to the free and unobstructed use of the entire
street . . . for purposes of travel, subject only to the reason-
able and proper control of the municipality.''

See also *Chase v. City of Oshkosh*, 81 Wis. 313 (15 L. R.
A. 553) ; *State v. Sugarman*, 126 Minn. 477 (148 N. W. 466).
In the latter case the ordinance prohibited the obstruction of
the street by persons gathering upon a foot walk or sidewalk
so as to obstruct the free passage of foot passengers. The
ordinance provided:

''Three or more persons shall not stand together or near
each other in any street, or on any foot walk or sidewalk in
said city, so as to obstruct the free passage for foot passengers ;
and any person or persons so standing shall move on imme-
diately after request to do so, made by the mayor, chief of
police, or any police officer or watchman.'' The court further
said: ''The main attack is directed against the ordinance.
It is contended that the city had no power to enact it. . . .
The regulation of traffic upon the crowded thoroughfares of
a large city is so imperative that the court should hesitate
to deny that this is among one of the police powers granted
to the same. . . . The purpose of the ordinance must be
kept in view. It is to secure to the public the use of streets
for unobstructed travel. Streets and highways are dedicated,

secured and maintained primarily for public transit, and must be so preserved. All other uses thereof must be subordinated or yield to the right of free and unobstructed passage. This ordinance must be considered as in aid of this primary use of the street, and not as a prohibition or regulation of assemblies therein, except as these interfere with public travel. . . . It might also be said that the power given to prevent public nuisances is sufficient authority for the enactment of the ordinance. Obstructions of public streets, whether by inanimate objects or by persons, would seem to come within the definition of a public nuisance. . . . The city is specifically charged with the care and maintenance of the streets for public travel, and, as a necessary incident, it would seem, proper regulations are indispensable so that travel may not be impeded or obstructed. The power to make rules and enforce them is required both for the convenience of travel and the protection of the streets.''

McQuillin on Municipal Ordinances, Section 458, says:

''It is undoubtedly true that the police power extends to all reasonable regulations relating to keeping the sidewalks, streets, and public ways free from obstructions and nuisances, and to all proper restraining regulations relative to the use thereof.''

In the syllabus to *Commonwealth v. Fenton*, 139 Mass. 195, it is said:

''A municipal regulation which prohibits any person from allowing his vehicle to stop in a street for a longer time than twenty minutes, is a valid police regulation, and on a complaint for violating the provisions of the regulation, evidence that the defendant had a license as a hawker or peddler, from the commonwealth, is immaterial.''

In *Commonwealth v. Brooks*, 99 Mass. 434, the same doctrine is recognized, although the defendant was acquitted on the ground that his violation was not intentional. See also *Gilcrest Co. v. City of Des Moines*, 128 Iowa 49.

*Lacy v. City of Oskaloosa*, 143 Iowa 704. This was an

action to restrain the defendant city and its officers from removing certain hitching posts or racks which had been placed and maintained along the street and bordering on a public park. The defendant contended that it had a right to remove them under the statute and by virtue of the police power vested in the city. The petition was dismissed by the court, and the plaintiff appealed. In disposing of the case, the court was called upon to deal somewhat with the questions presented in this case. The court said:

"By statute, the control and care of the streets are vested exclusively in the city, and it is made its duty to see that they are kept open and in repair and free from nuisances. . . . The powers thus conferred are legislative in character, and, within the limits prescribed by statute, are plenary. The only limit upon them which the courts have been inclined to recognize is that they shall not be exercised unreasonably. The wisdom of a legislative act is not a matter for judicial consideration or review, nor will the courts inquire into the necessity of a change or improvement in a public street, ordered in due form by municipal authority. The statute provides that the obstruction or incumbering of public roads by buildings, fences or otherwise is a nuisance (Code Section 5078); and, as we have already seen, cities are charged with the duty of keeping the streets free therefrom. The primary use or purpose for which streets are established is to afford the public a way of passage or travel. . . . A 'street' is a public way from side to side and from end to end, and any private use thereof which, in any degree, detracts from, hinders or prevents its free use as a public way to its full extent, is, within the meaning of the law, an obstruction or incumbrance. . . . The fact that, notwithstanding the obstruction, there is still ample room left for passage of teams and travelers, will not exempt it from liability to removal whenever ordered by the proper municipal authority." See also, as bearing on this point, *Quinn v. Baage*, 138 Iowa 426; *Morrison v. Chicago & N. W. R. Co.*, 117 Iowa 587.

. We have these propositions established, so far as the city and the general public are concerned:

That the public streets of a city are dedicated to public use, and are a public way from "side to side and end to end," and that any private use thereof which in any degree detracts from or hinders or prevents its free use as a public way to its full extent is, within the meaning of the law, an obstruction or encumbrance, and any obstruction or encumbrance for private purposes is in law a nuisance.

That the city is given the exclusive care and control of the streets, and it is made its duty to keep them open and in repair and free from nuisance; that the primary use or purpose for which streets are established is to afford the general traveling public a way of passage or travel, and the general traveling public is invested with the right to have them in repair and free from nuisance, that this right may be enjoyed.

This brings us to a consideration of the right of the individual in and to the use of the streets, separate and distinct from his right as a member of the general traveling public. In 1812, Lord Ellenborough, of Eng-

3. MUNICIPAL COR-
PORATIONS:
streets, etc.:
private use:
parking auto-
mobiles.

land, had occasion to speak on this question. He spoke in the case of *Rex v. Cross*, 3 Campbell's Reports 224. In this case, the defendant was indicted for causing and permitting coaches to stand and remain for a long and unreasonable time in the public highway, to the great annoyance of his majesty's subjects. Lord Ellenborough said:

"And is there any doubt that if coaches on the occasion of a rout, wait an unreasonable length of time in a public street, and obstruct the transit of his majesty's subjects who wish to pass through it in carriages or on foot, the persons who cause and permit such coaches so to wait are guilty of a nuisance? . . . The king's highway is not to be used as a stable yard. It is immaterial how long the practice may have prevailed, for no length of time will legitimate a nui-

sance. . . . A stage coach may set down or take up passengers in the street, this being necessary for public convenience; but it must be done in a reasonable time; and private premises must be procured for the coach to stop in during the interval between the end of one journey and the commencement of another. No one can make a stable yard of the king's highway.''

He spoke again in *Rex v. Jones,* 3 Campbell's Reports 230. In this case, the defendant occupied a small timber yard. From the narrowness of the street and the construction of the yard, he had, in several instances, necessarily deposited long sticks of timber in the street, and had them sawed into shorter pieces before they were carried into his yard. Judge Ellenborough said:

''A cart or wagon may be unloaded at a gateway; but this must be done with promptness. So as to the repairing of a house,—the public must submit to the inconvenience occasioned necessarily in repairing the house; but if this inconvenience is prolonged for an unreasonable time, the public have a right to complain, and the party may be indicted for a nuisance. The rule of law upon this subject is much neglected, and great advantages would arise from a strict and steady application of it. I cannot bring myself to doubt the guilt of the present defendant. He is not to eke out the inconvenience of his own premises by taking in the public highway into his timber yard; and, if the street be narrow, he must remove to a more commodious situation for carrying on his business.''

In *Cohen v. Mayor, etc., of New York,* 113 New York 532 (4 L. R. A. 406), the court said:

''The storing of the wagon in the highway was a nuisance. The primary use of a highway is for the purpose of permitting the passing and re-passing of the public, and it is entitled to the unobstructed and uninterrupted use of the entire width of the highway for that purpose. It is no answer to the charge of nuisance that, even with the obstruction in the

highway, there is still room for two or more wagons to pass; nor that the obstruction itself is not a fixture. . . . The highway may be a convenient place for the owner of carriages to keep them in, but the law, looking to the convenience of the greater number, prohibits any such use of the public streets.''

The authorities seem uniform in holding that a person cannot carry on his business in a public street in such a way as to obstruct the street, either by placing actual physical obstructions upon it, or even in such a way as to collect crowds upon the walk, or in front of his business, or so as to interfere with the public travel. If he does, he is chargeable as for nuisance. The fact that the business is lawful does not justify him in interfering with or annoying the public by obstructing the free use of the streets. The right given the citizen is to use the public highway for travel, but not so as to impede the free passage of other citizens upon it generally.

The plaintiff's claim is summed up in the 5th paragraph of his petition, and this brings us to a consideration of the claim that the ordinance is in excess of the lawful power of the city, and void. This contention rests

4. MUNICIPAL CORPORATIONS: streets, etc.: regulation and control: effect of Automobile Act.

upon the thought, suggested, that the state has taken from the city the powers to prohibit or restrict the standing of private automobiles in the streets. This contention rests upon the claim that, in the enactment of Chapter 2-B, Title VIII, Code Supplement, 1913, the state has taken away from the city the power to regulate and control the use of automobiles upon all public highways, including the streets of the city, and that the city has no power to pass any ordinance, rule, or regulation such as is here complained of. It cannot be contended that, by the enactment of this chapter, the state, through its legislature, has taken away from the city all right to regulate the occupancy of the public streets under the power theretofore existing in the city; that it has taken

away from it the power to keep it free from nuisance, and open and free to the general public as an avenue of travel.

It is true that, in Subdivisions 13, 14, 15 and 16 of Sec. 1571-m18 of this chapter, the state has made some regulations touching the standing of automobiles upon public streets or highways. Subdivision 13 makes it unlawful for the operator of a motor vehicle to leave the vehicle standing upon any street in the business district within 20 feet of the corner, or within 20 feet of a hydrant, unless such vehicle is in charge of some person capable of driving the same. Subdivision 14 provides that no motor vehicle shall be left standing in front of or within 15 feet of either side of the entrance of a theater, etc., where large assemblies of people are being held, except in taking on or discharging passengers or freight. Subdivision 15 provides for the control of these vehicles under the direction of the police. Subdivision 16 makes it unlawful for the operator or person in charge to leave unattended upon any street or highway a motor vehicle while any part of the machinery is in motion. These are positive inhibitions and directions from the state, and are effectual and must be enforced as just and reasonable regulations on the part of the state of the use of public highways within its limits.

It is true that Section 1571-m20 provides that local authorities shall have no power to pass, enforce, or maintain any ordinance, rule or regulation requiring from any owner to whom this act is applicable, any fee, license or permit for the use of the public highways. It is true that it provides that municipalities may not exclude the owner of an automobile from the free use of the public highway. In passing on the last proposition, it is sufficient to say that this ordinance does not exact any fee, license, or permit from the owner of any automobile for the privilege of using the public streets. It does not exclude any automobile owner from the free use of the public streets. We interpret this to mean the free use for the purposes for which streets are primarily dedi-

5. MUNICIPAL CORPORATIONS: streets, etc.: "free use by automobiles:" statute: construction.

cated; the free use of the streets for public travel. Clearly, it cannot mean that the city is prohibited from preventing the obstruction of its streets by the leaving of automobiles standing therein, to the hindrance and inconvenience of the general public in the use of the streets for travel.

While the statute provides that no municipality can exclude an automobile owner from the free use of the public highway, it cannot with reason be said that, by such enactment, the legislature undertook to, and did, repeal Section 753 of the Code of 1897, in so far as it gives power to a city to keep its streets open and in repair, and free from nuisance. It cannot be interpreted that, when it said, ''The city shall not have power to exclude such owner from the free use of the public highway,'' it meant thereby to say, and did say, that thereafter the city had no power to prevent a citizen ''from making a stable yard of the king's highway.'' If the restrictions and regulations for the use of automobiles upon the public highways, provided for in Chapter 2-B of Title VIII, Code Supplement, 1913, were the only regulations and restrictions that could, under any circumstances, be made binding upon a citizen or user of the public streets in the crowded thoroughfares of a large city, then the city would be powerless to prevent the absolute obstruction of its streets by the standing and crowding of automobiles thereon, even to the extent of an absolute hindrance of the use of the streets for their primary purpose. In fact, so far as automobiles are concerned, it would prevent the city from keeping the streets open and free from nuisance. Thus, the general public welfare would be subordinated to a reckless disregard of the rights of others in the use of the public thoroughfares within the city.

The plaintiff's contention, when reduced to the last analysis, is that, under this act of the legislature, all automobile owners and drivers are given full license to stop their cars upon the public streets when and where they please, and for such a length of time as suits their pleasure and convenience,

and to leave them standing there, though to the great prejudice and inconvenience of the general public desiring to use the streets for their primary purposes; and the city, whose duty it is to keep the streets open and free from nuisance, is rendered as helpless as the shackled prisoner at the bar. The mere statement of the proposition is its own answer. Conceding, for the purpose of the argument, that the legislature has given to the automobile driver the free use of the public streets, and that the city has no power to exclude from the free use of the public streets, we must construe this language to mean that free use which is involved in the right to come and go and drive upon the streets without let or hindrance. The idea of the free use of a street does not involve the right to obstruct the free use of the street. If one man, in the exercise of his right to the free use of the street, can stable his automobile upon the public street and leave it standing there, any number of persons can exercise the same right, until a point is reached where the travel upon the street is absolutely obstructed. Each, under plaintiff's contention, would be exercising his right to the free use of the street. We do not find anything in this ordinance inconsistent with or contrary to the provisions of the chapter relied on, and we think the ordinance is reasonable in its provisions. Without passing upon the question as to whether or not an action of this kind can be maintained in a court of equity, because such holding is not necessary to the determination of this case, we call attention to *Huston v. City of Des Moines*, 176 Iowa 455, in which this question was discussed and determined. Upon the whole record, we think the court erred in overruling defendant's demurrer to plaintiff's petition, and in granting the writ as prayed, and the cause is, therefore,—*Reversed.*

EVANS, C. J., LADD and SALINGER, JJ., concur.