**Glenn W. BRICKER, M. D.,**
**Plaintiff,**

v.

**John J. CRAVEN, Jr., et al.,**
**Defendants.**

**Civ. A. No. 74–1292–G.**

United States District Court,
D. Massachusetts.

March 26, 1975.

---

Glenn W. Bricker, M.D., pro se.

Lawrence J. Ball, Asst. Corp. Counsel, Jeffrey J. Binder, Deputy Asst. Atty. Gen., Boston, Mass., for defendant.

## MEMORANDUM AND ORDER OF DISMISSAL

GARRITY, District Judge.

The plaintiff in this suit challenges certain Massachusetts statutes which regulate parking and the penalties for violations thereof. The plaintiff asserts that the practices complained of are in violation of the Fourteenth Amendment, giving rise to a cause of action under 42 U.S.C. §§ 1983 and 1985. Jurisdiction is predicated upon 28 U.S.C. § 1343 (3).

The provisions attacked by the plaintiff are Mass.G.L. c. 90, § 20C, and c. 263 of the Acts of 1929 as amended by c. 253 of the Acts of 1973, c. 665 of the Acts of 1971, c. 494 of the Acts of 1968, and c. 228 of the Acts of 1966. Chapter 90, § 20C, provides for the ticketing of cars committing parking violations. If tickets are paid within 21 days the proceedings are civil; after that date the violation becomes a criminal case and a summons would normally issue to the registered owner of the vehicle. A failure to appear in court in response to the summons may result in the suspension of a person's right to operate a motor vehicle, or his license or the issuance of an arrest warrant. Chapter 263 as amended provides for the towing and holding of cars until outstanding lawful charges are paid if in that calendar year five or more tickets have been placed on the vehicle and remain unpaid. The vehicle may also be released if security is posted for the payment of charges. This provision is aimed at the scoff-law who habitually violates parking regulations and ignores tickets placed on his car.

The plaintiff is the owner of a motor vehicle, New Hampshire registration number GA556. The vehicle was in the custody of his daughter, who apparently was residing in Massachusetts temporarily. Between September 10, 1973 and December 24, 1973 the vehicle was ticketed 31 times for parking violations amounting to $310. Between February 21, 1974 and March 26, 1974 the vehicle was ticketed another 10 times for fines equalling $85. On March 26, 1974 the plaintiff's vehicle was towed under c. 263 as amended. Plaintiff thereafter filed this suit seeking injunctive and declaratory relief.[1]

The asserted claims are a denial of due process and of equal protection. The due process claim is an asserted lack of notice and hearing. The equal protection claim arises from an alleged practice of the defendants whereby summonses are not mailed to the registered owners of out-of-state cars as is done with vehicles registered in Massachusetts, when tickets affixed to vehicles violating parking violations are not paid.

The defendants have moved to dismiss and the plaintiff for summary judgment. Numerous memoranda, affidavits and exhibits were filed and a hearing was held. The plaintiff's motion for summary judgment is denied and the defendants' motion to dismiss is granted. The plaintiff does not contest the validity of the tickets issued and in our view therefore could only escape towing and storage charges were he to prevail.[2]

In assessing the plaintiff's claims the court cannot overlook the crisis which exists in many cities during business hours. Anyone who attempts to enter a major city during rush hours and find parking space has first-hand knowledge of this situation. In Boston, where narrow lanes designed for horse and carriage traffic have simply been paved over, the problem is severe. The statutory provisions which the plaintiff attacks are intended to deal with those problems by establishing a means of efficiently dealing with violators. The particular scheme attacked here has been buttressed by the use of computers. In the absence of a computer system, effective regulation would probably be impossible.

Plaintiff's first claim is that he was denied equal protection of the law when a summons was not mailed to him pursuant to c. 90 [3] after tickets affixed to his car were not paid. He alleges that this deprived him of a further notice of the violations. We begin from the premise that state officials have a wide degree of discretion in dealing with traffic regulations. Cf. Railway Express Agency v. New York, 1949, 336 U.S. 106, 69 S.Ct. 463, 93 L.Ed. 533. In this regard it is not required that things that are different in fact be treated under the law as though they were the same. See Tussman and tenBroek, The Equal Protection of the Laws, 37 Calif.L.Rev. 341 (1949). Simply put, there are vast differences between cars registered in Massachusetts and those not so registered. Assume that state officials issued a summons which the plaintiff received at his home in New Hampshire. That summons would be unenforceable by officers of the Commonwealth outside of Massachusetts. Certainly the plaintiff could not be extradited from New Hampshire for a parking violation. By contrast, a Massachusetts resident who ignores a summons may be arrested by the state's police. Moreover, his right to drive or his driving license may also be suspended. Massachusetts cannot so unilaterally

---

1. The plaintiff's first suit, Bricker v. City of Boston, C.A. 74–1200–G, erroneously joined the city as a defendant. See City of Kenosha v. Bruno, 1973, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109.

2. The charge for towing and storage, assuming the vehicle is retrieved in one day, is $15; the similar charge when towed from private property is $25.

3. There is no difference in the enforcement of c. 263 between out-of-state vehicles and in-state vehicles.

affect the rights of New Hampshire residents.[4]

There are other differences between the plaintiff and motorists who register their cars in Massachusetts. Massachusetts officials can identify the owner of vehicles registered under c. 90 from their records. To identify out-of-state owners, assistance must be sought from officials in the state of registration—a process which may entail further delay and expense for no purpose.

Finally there were approximately a quarter of a million parking violations by out-of-state vehicles in 1973; approximately ten percent of those tickets were paid. The defendants cannot easily identify which of these violations are by repetitious scoff-laws and which by the tourist here on a short visit. Mailing summonses to those violators alone would cost $25,000 with no assurance of any recoupment. The expenses involved in identifying these violators by contacting other states, additional computer time to compile data and preparing summonses would probably be staggering. In 1973 the clerk's office of the Boston Municipal Court received 1.1 million notices of parking violations. These violations should result in a summons if unpaid as of 21 days from issuance; however, because of their volume there is a two to three month time lag in processing. If out-of-state summonses were prepared and mailed, there would presumably be at least a 20% increase in the workload—possibly futile work. Given these differences, the treatment afforded out-of-state motorists by Massachusetts officials is not only constitutional but eminently practical.[5]

The plaintiff's second theory is premised upon Fuentes v. Shevin, 1972, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556, and alleges a constitutional infirmity with respect to notice and hearing. Under c. 90, § 20C, a court hearing may be obtained as to any parking ticket. The plaintiff's claims go rather to the immediate seizure of vehicles pursuant to c. 263 as amended. The "notice of violation" or parking ticket clearly states that "Court hearing may be obtained upon the written request of the registered owner." The plaintiff's claims are that no notice that a flagrant violator may be towed appears on the ticket; and that since the registered owner must request the hearing and he has not been himself served with the ticket or a summons, he has been given no notice of his impending liability.

When the state attempts to deal with parking violations the normal situation is an empty, illegally parked car. Unless a summary seizure of illegally parked cars were employed—which would be wholly unworkable—the only means of enforcement is through the registered owner. Any approach other than holding the registered owner liable would place an impossible burden upon the state. Therefore the registered owner of a vehicle must be held liable for parking violations regardless of who the operator is. Chapter 90, § 20C, clearly speaks to the "owner's" liability for parking violations. This situation must be viewed as simply a responsibility inherent in allowing another, whether a relative, friend, or stranger, to use one's car. Despite their commonplace existence in our daily lives, cars are not playthings and substantial responsibilities attach to their ownership and use. The responsibility of the registered owner for parking violations is only one such responsibility, and a relatively minor one.

---

4. While the right to drive in Massachusetts might be suspended, it would require a roadblock on every highway entering the state to enforce such a penalty.

5. The plaintiff has also challenged the validity of not mailing summonses to out-of-staters under Massachusetts law. In our view there is nothing in c. 90 which would indicate that the Massachusetts legislature intended to direct the mailing of a summons which would be without legal effect to out-of-state residents. The penalties provided under § 20C, since they are to be carried out by the Registrar of Motor Vehicles, reinforce this view. We therefore believe that the procedure followed is a wise and justified administrative practice.

With this in mind we conclude that the plaintiff's claims are not analogous to those of the debtor in Fuentes v. Shevin, 1972, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed. 2d 556. The state here is not giving a creditor the advantage of summary process for gaining possession of a chattel. Rather the state is pursuing a "valid governmental interest" which is expressly excepted in *Fuentes, supra,* at 82, 92 S.Ct. 1983. After an evaluation of the circumstances, which must include the practicalities and peculiarities of the case, the balancing of the interests at issue demonstrate that the plaintiff's rights have not been violated. See Mullane v. Central Hanover Bank & Trust, 1950, 339 U.S. 306, 314–15, 70 S.Ct. 652, 94 L.Ed. 865.

■ The question presented is whether the registered owner of an out-of-state vehicle must receive some notice of a parking violation other than the ticket affixed to the car before that car can be towed and held for ignoring a long series of such notices of parking violations. We think not. Obviously if the owner is himself the operator, the question is much easier. One who himself intentionally flaunts the law for a substantial period of time has simply lost in the gamble he has taken. Where the owner is not the operator who has actually engaged in the illegal course of conduct, the situation is somewhat different but the outcome is not.[6] When the owner of a vehicle allows someone to take it out of state and remain absent for a substantial period of time, he has parted with a substantial possessory interest or right of use of that vehicle. An example is the student attending school away from home who has a car registered in his father's name. In our opinion the owner has voluntarily assumed the risk

that the operator may park the vehicle illegally no less than he has assumed the risk that negligent operation of the vehicle may result in its destruction or damage. The state has no obligation to inform the distant owner that his trust has been misplaced.[7]

Wholly aside from this balancing of interests, it is not altogether clear that there must be notice and a hearing prior to this type of seizure. See Mitchell v. W. T. Grant Co., 1974, 416 U.S. 600, 611–615, 94 S.Ct. 1895, 40 L.Ed.2d 406. The suggestion made in the *Mitchell* case by the Court is that, given a valid governmental interest, a reasonable procedure and some basis in fact for the action, a seizure of property before notice and hearing may be permissible if notice, hearing and a judicial determination are available before any final deprivation of property takes place. We do not believe it is arguable that any of these conditions do not exist in this case. This suggested approach to the necessity of pre-seizure notice and hearing was refined further in Calero-Toledo v. Pearson Yacht Leasing Co., 1974, 416 U.S. 663, 676–680, 94 S.Ct. 2080, 40 L.Ed. 2d 452. In holding valid the seizure of a boat, without prior notice or hearing, the Court relied expressly upon the suggested exception in *Fuentes* where

"the seizure has been directly necessary to secure an important governmental or general public interest. Second, there has been a special need for very prompt action. Third, the State has kept strict control over its monopoly of legitimate force: the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular

---

6. Our analysis *ante* of the plaintiff's equal protection claim is plainly relevant to this question but shall not be repeated.

7. The plaintiff has asserted that there must be specific notice at some point that a vehicle may be towed and stored if parking

violations are ignored. However, towing is sufficiently routine that the reasonable traffic violator should know that his vehicle may be towed for such reasons as parking in front of a fire hydrant or obtaining and ignoring a hundred dollars worth of parking tickets.

instance." *Calero-Toledo, supra,* at 678, 94 S.Ct. at 2089, quoting *Fuentes, supra,* 407 U.S. at 91, 92 S.Ct. 1983. That is precisely the situation here. Accordingly the plaintiff's complaint challenging the Massachusetts towing provisions is ordered dismissed.