**Jack BAKER, Appellee,**

v.

**CITY OF IOWA CITY, Iowa, Appellant.**

**No. 58955.**

Supreme Court of Iowa.

Dec. 21, 1977.

Anatolij Kushnir, Iowa City, for appellant.

John Nolan, Iowa City, for appellee.

McCORMICK, Justice.

The question here is whether an Iowa City ordinance which authorizes use of the "Denver boot" to immobilize illegally parked motor vehicles is unconstitutional. The boot consists of metal clamps and screws and a padlocking device which, when attached to the wheel of a motor vehicle, prevents it from being driven. The trial court held the ordinance violates the due process guarantees of Article I, § 9, of the Iowa Constitution and the Fourteenth Amendment of the United States Constitution. We reverse.

Plaintiff Jack Baker brought this action seeking damages for deprivation of his automobile by the City's use of the boot and requesting an injunction against future uses of it, alleging the unconstitutionality of the ordinance on due process grounds. The damage claim was dismissed and is not involved here. The injunction claim was tried and resulted in the judgment from which appeal is taken. No issue is presented regarding the possible mootness of this action, and we intimate no view of that question.

At the times material here Baker owned a Rambler automobile which bore Kossuth County license plate 55–4595. Prior to January 25, 1975, it had accumulated nine unpaid tickets for overtime parking, carrying penalties totalling $14.20. On that date it was found illegally parked in a City lot and a tenth ticket was issued. The meter maid ascertained that the vehicle was on the "Denver boot" list, and the device was attached to Baker's car at about 1:00 p. m. Upon discovering the device, Baker went to the traffic bureau and paid his accumulated fines. The boot was removed at approximately 2:00 p. m. Baker based the present action on those events.

The challenged ordinance provides in relevant part:

SECTION I PURPOSE. The purpose of this Ordinance is to authorize the use of the "Denver Boot" in impounding motor vehicles parked in violation of parking regulations within the City of Iowa City, Iowa.

SECTION II DEFINITIONS. The following terms, when used in this Ordinance, shall be defined as follows:

1) DENVER BOOT. A device consisting of metal clamps or jaws and screws

and a padlocking device which, when attached to the wheel of a motor vehicle, prevents the vehicle from being driven.
* * *

  *   *   *   *   *   *

2) VIOLATION. For the purpose of this Ordinance, whenever a motor vehicle is parked contrary to any Ordinance of the City regulating parking, it shall be in violation.

SECTION III AUTHORIZATION. The City Manager or persons authorized by the City Manager of the City of Iowa City, may subject to the limitations of this Ordinance, authorize the impoundment of any motor vehicle on a public street or in a public or private parking lot by the use of the Denver Boot, when said vehicle is in violation of an existing parking Ordinance.

SECTION IV LIMITATIONS. The following limitations shall be applicable in all cases of impounding by the use of the Denver Boot:

1) Impoundment by the Denver Boot shall be limited to a period not to exceed twenty-four (24) hours, except under emergency or unusual conditions as may be determined by the Chief of Police to exist in his discretion for safety or traffic reasons, pursuant to which said time period may be reduced or extended.

2) No vehicle shall be impounded by use of the Denver Boot unless said vehicle is actually in violation of an existing parking Ordinance.

3) No vehicle shall be impounded by use of the Denver Boot within the traveled portion of any street or on any portion of a street or sidewalk when the impoundment at such place would create a hazard to the public or to traffic.

4) Any individual owning or operating a vehicle impounded by the use of the Denver Boot may obtain its release by posting bond as required by the Police Court of Iowa City, Iowa.

5) Upon the lapse of the time period enumerated herein, the Chief of Police shall have the motor vehicle towed to an appropriate impounding lot. Upon such towing, the owner or operator of said vehicle shall be liable for the cost of said towing and storage, in addition to bonds for violation and may not have said vehicle released until said costs are paid and bond posted.

Evidence at trial disclosed the circumstances in which the boot was attached to Baker's vehicle. Additional evidence showed how vehicles were placed on the boot list.

The traffic bureau was supervised by City treasurer June Higdon. She was in charge of ticket collection efforts. Tickets more than ten days old were filed separately. Ordinarily owners of motor vehicles were billed when they accumulated three dollars worth of tickets in this category. A regular procedure was utilized to obtain the names and addresses of registered owners of out-of-county Iowa vehicles when the ticket did not contain that information. The information was first sought through the TRACIS computer system for counties which participate in it. For other counties the City wrote to the county motor vehicle department requesting the information. Occasionally these procedures failed to produce the information. On other occasions names and addresses would be obtained but the address would be inaccurate or it would develop that the vehicle had been sold, and additional efforts would be necessary to secure the owner's name and address.

If the vehicle accumulated a backlog of tickets of approximately $15 and the identity and address of the owner had not been ascertained through the bureau's procedures, the vehicle was placed on the boot list. If the information was later obtained the vehicle was removed from the boot list upon weekly review. When the name and address of the owner was known and the owner did not pay the tickets when billed, the vehicle was not placed on the boot list. Instead the tickets were referred to magistrate's court for prosecution. The boot was used as a means of getting habitual violators into court only when they were not amenable to summons or warrant because their names and addresses were unknown.

The City did not have Baker's name and address when the boot was placed on his car, although the record does not show what the problem was in getting it.

In striking the ordinance the trial court held it denied due process both on its face and as applied to Baker because it permitted seizure of an unlawfully parked motor vehicle without prior notice and hearing.

We have recognized that an ordinance, like a statute, is not unconstitutional on its face unless it is unconstitutional in every conceivable state of facts, and it will not usually be held unconstitutional as applied unless it is unconstitutional in the factual situation before the court. *City of Des Moines v. Lavigne,* 257 N.W.2d 485, 486 (Iowa 1977). One to whom an enactment is constitutionally applied ordinarily lacks standing to assert that it might be unconstitutionally applied to others. *State v. Price,* 237 N.W.2d 813, 816 (Iowa 1976), appeal dismissed, 426 U.S. 916, 96 S.Ct. 2619, 49 L.Ed.2d 370. Moreover, we have repeatedly emphasized that one who challenges the constitutionality of legislation has the burden to prove it is unconstitutional beyond a reasonable doubt. See *City of Waterloo v. Selden,* 251 N.W.2d 506, 508 (Iowa 1977).

In keeping with these principles, the determinative issue is whether Baker met the heavy burden of establishing the unconstitutionality of the ordinance as applied to him. If he failed to carry that burden, he necessarily failed to establish the unconstitutionality of the ordinance on its face.

Baker's car was immobilized by the boot for approximately one hour, after being found unlawfully parked in Iowa City for the tenth time, none of the prior tickets having been paid, and Baker's name and address having not been obtained through the City's normal procedures. The boot accomplished its purpose. The City got Baker's attention. He paid his fines and his vehicle was released. If he wished to contest any of his tickets he could have obtained release of the vehicle by posting bond. The burden would then have been on the City to prove the parking violations in the usual way in a regular judicial proceeding.

The applicable due process standard for governmental seizure of private property without prior notice or hearing was explained and applied in *Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974). The Court held that in limited circumstances immediate governmental seizure of property without an opportunity for prior hearing is permissible. Relying on *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), the Court defined such circumstances as including those in which (1) the seizure has been directly necessary to secure an important governmental interest, (2) there has been a special need for very prompt action, and (3) the state has kept strict control of its monopoly of legitimate force. 416 U.S. at 678, 94 S.Ct. at 2089, 40 L.Ed.2d at 465. The Court said due process is not denied when postponement of notice and hearing is necessary, among other reasons, to aid the collection of taxes, citing *Phillips v. Commissioner of Internal Revenue,* 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289 (1931). In *Calero-Toledo* the Court upheld Puerto Rico's seizure without prior notice or hearing of a yacht allegedly being used by a lessee to transport marijuana. In *Phillips,* the Court affirmed the right of the United States to collect revenue by summary administrative proceedings noting:

> Where, as here, adequate opportunity is afforded for a later judicial determination of the legal rights, summary proceedings to secure prompt performance of pecuniary obligations to the government have been consistently sustained. 283 U.S. at 595, 51 S.Ct. at 611, 75 L.Ed. at 1296.

This principle has not been eroded by the cases of *Mitchell v. W. T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974) and *North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975), which, like *Fuentes,* concerned the rights of private creditors. We recently reviewed those holdings in *Stoller Fisheries, Inc. v. American Title Insurance Company,* 258 N.W.2d 336, 342–345 (Iowa 1977).

■■ We believe the three-pronged due process test delineated in *Fuentes* and applied in *Calero-Toledo* was satisfied here. First, seizure of Baker's automobile served a significant governmental interest by assisting in the enforcement of traffic regulations. A city's right to restrict standing and parking of vehicles and to impose reasonable penalties for violation of such regulations is well established. *City of Des Moines v. Reiter,* 251 Iowa 1206, 102 N.W.2d 363 (1960). The right to limit the duration of parking comes within the city's police power to keep streets open and free from nuisances. *Pugh v. City of Des Moines,* 176 Iowa 593, 156 N.W. 892 (1916). Baker's vehicle had been found in violation of such traffic regulations ten times without satisfaction of the penalties involved at the time the Denver boot was attached to it. Second, a special need for prompt action existed. Despite reasonable efforts to learn the name and address of the vehicle owner, that information had not been obtained. This made preseizure notice and hearing impracticable if not impossible. Yet if the City did not act quickly its remedy would probably be lost because Baker could drive away and ignore his tenth ticket as he had the others. And finally, private parties were not involved in the seizure process. The City maintained strict control over its monopoly of legitimate force. In these circumstances, the seizure of Baker's vehicle and postponement of hearing until afterwards did not deny him due process.

In contending otherwise Baker asserts the boot's use does not further the City's acknowledged interest in keeping the streets open and free of nuisance because it prolongs the obstruction by immobilizing the vehicle. We do not agree. As applied by the City the ordinance was aimed at the habitual violator who ignored tickets placed on his car and who could not be reached by summons or warrant because his name and address had not been obtained through the City's regular procedures. By enabling the City to enforce its parking regulations, the boot ordinance furthers their purpose. The short-term immobilization of an unlawfully-parked vehicle is simply a means to achieve the broader objective. The ordinance restricts use of the boot and duration of its use to situations where a hazard to the public will not be created. Ordinarily the vehicle is towed away after 24 hours. Use of the boot as an alternative to towing and impoundment lessens the inconvenience and economic burden of the violator and is not a basis for establishing the unconstitutionality of the procedure.

This case is analogous to *Bricker v. Craven,* 391 F.Supp. 601 (D.Mass.1975), which involved a due process challenge to a Massachusetts statute providing for the towing and holding of cars until lawful charges were paid if in the same calendar year five or more tickets had been placed on the vehicle and remained unpaid. The court observed, "This provision is aimed at the scoff-law who habitually violates parking regulations and ignores tickets placed on his car." *Id.* at 602. In rejecting a challenge to this statute based upon a claimed denial of notice and hearing before seizure, the court said, "One who himself intentionally flaunts the law for a substantial period of time has simply lost in the gamble he has taken." *Id.* at 605. The court also held the owner assumes the same risk when the violations occur while the vehicle is entrusted to another. We reach the same conclusion here.

Challenges to impoundment legislation were also involved in *Graff v. Nicholl,* 370 F.Supp. 974 (N.D.Ill.1974), and *Remm v. Landrieu,* 418 F.Supp. 542 (E.D.La.1976). In *Graff,* Illinois statutes and Chicago ordinances authorized seizure and disposition of abandoned motor vehicles without requiring prior notice to vehicle owners. The court held that due process required notice to vehicle owners but "only to those owners whose identity may be practicably ascertained." *Id.* at 983. By analogy, the Iowa City boot ordinance was only used against vehicles like Baker's where the identity of the owner had not been obtained through regular means of securing such information. In *Remm,* a New Orleans ordinance authorized towing and impoundment of illegally parked vehicles without

prior notice and opportunity for hearing. The court upheld this procedure but invalidated the provision of the ordinance which required payment of towing and storage charges for release of the vehicle without prior notice and hearing. The similar provision of the Iowa City ordinance was not applied to Baker since towing did not occur here.

We hold that Baker did not meet his burden to prove the ordinance was unconstitutional as applied to him. On that basis he also failed to show it is unconstitutional on its face.

REVERSED.

All Justices concur except REES, J., and MOORE, C. J., who dissent.

REES, Justice (dissenting).

I respectfully dissent.

Plaintiff Baker asserted, and the trial court held, the ordinance was constitutionally infirm. The Denver Boot was placed on plaintiff's car without notice being given to him that his car was going to be impounded. Plaintiff claimed successfully in the trial court that the ordinance violated due process of law since no preseizure or preimpoundment notice was given that the Denver Boot was to be placed on his car.

The defendant City claims the ordinance did not violate due process of law since an attempt was made to ascertain the plaintiff's residence and to give him notice of a judicial proceedings for the collection of outstanding traffic tickets, and that the Denver Boot was placed on a car like the plaintiff's only where the owner's residence was difficult to ascertain.

Even though *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), held that a creditor could not seize a debtor's property under summary governmental procedure that was used in that case, the court gave the standard for the government's seizure of property without notice in emergency situations, and said:

"Only in a few limited situations has this court allowed outright seizure without opportunity for a prior hearing.

First, in each case, the seizure has been directly necessary to secure an important governmental or general public interest. Second, there has been a special need for very prompt action. Third, the State has kept strict control over its monopoly of legitimate force: the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance."

See 407 U.S. at 90–91, 92 S.Ct. at 1999–2000, 32 L.Ed.2d at 576.

The three-prong *Fuentes* test above set out has been applied to the impoundment of vehicles for violation of parking ordinances and in the case of abandoned vehicles. *Remm v. Landrieu,* 418 F.Supp. 542, 545 (E.D.La.1976); *Bricker v. Craven,* 391 F.Supp. 601, 604–607 (Mass.1975); *Graff v. Nicholl,* 370 F.Supp. 974, 982 (N.D.Ill.1974). Although the loss of the automobile was temporary, it was considered a "grievous loss" requiring notice in ordinary circumstances before the car could be seized. *Remm v. Landrieu,* 418 F.Supp. at 545; *Graff v. Nicholl,* 370 F.Supp. at 981. In those cases, however, the courts said they would allow seizures of automobiles without notice in emergency situations as defined by the *Fuentes* test. Those courts concluded that the traffic problems caused by the use of motor vehicles in cities created an important interest of the local government in the prompt seizure and removal of cars in violation of parking regulations designed to correct the problems and eliminate traffic hazards in certain situations. *Remm v. Landrieu,* 418 F.Supp. at 545; *Bricker v. Craven,* 391 F.Supp. at 604–605. Since the government would, in such instances, have exclusive control over the use of force in impounding automobiles, the *Fuentes* test would be satisfied and would permit the seizure of automobiles in such situations without notice.

Applying the *Fuentes* test to the factual situation in this case, I would hold the *Fuentes* requirements for seizure without notice are not satisfied by ordinance No.

2558. It is obvious the City of Iowa City has an important governmental interest in enforcing its parking regulations, and ordinance No. 2558 affords the City as the local government a strict monopoly on the force used. However, there is no apparent need for the defendant City to employ prompt seizure proceedings by restraining the car by the use of the Denver Boot. A prompt seizure might be justified in order to enforce the parking ordinance against an out-of-state violator (see *Bricker,* 391 F.Supp. at 603–604), or to provide for the public safety (*Remm,* 418 F.Supp. at 545). There was no indication Baker was an out-of-state resident whom it would have been difficult to locate. Since it was possible for the city authorities to identify Baker from the car registration records there was no justification for a prompt seizure of the car since the owner could be brought into court by regular judicial process by the service of a summons.

There was no showing in the record that the use of the Denver Boot was justified for any public safety reason and, in fact, its use indicated there was no need for the prompt removal of the car in order to protect the public since the Boot immobilized the car at the spot where the parking violation occurred. Since there was no need for prompt action to enforce traffic regulations, as required by the *Fuentes* test in order to justify a seizure without notice, I adhere to the view the ordinance is unconstitutional both on its face and as applied to this case. In my judgment, the use of the Denver Boot violates due process of law by authorizing the seizure of an automobile without notice. I would hold the ordinance is unconstitutional, and, as a consequence of its constitutional infirmities, an unreasonable exercise of the police power of the City.

I would affirm the trial court.

MOORE, C. J., joins this dissent.