BERNARD M. BANE vs. CITY OF BOSTON & another.[1]

Suffolk.    May 11, 1979. — October 31, 1979.

Present: KEVILLE, PERRETTA, & DREBEN, JJ.

*Due Process of Law*, Seizure of motor vehicle.

In an action seeking a determination of the legality of St. 1929, c. 263,
§ 2, as amended, there was no merit to the plaintiff's contention
that he was denied due process of law when his car was towed and
held pursuant to c. 263. [554-556]

In an action seeking a determination of the legality of St. 1929, c. 263,
§ 2, as amended, there was no merit to the plaintiff's contention
that the rights guaranteed to him by arts. 11, 12, 14 and 30 of the
Massachusetts Declaration of Rights were violated when his car
was towed and held pursuant to c. 263. [556-557]

In an action seeking a determination of the legality of St. 1929, c. 263,
§ 2, as amended, there was no merit to the plaintiff's contention
that he was not afforded notice of the nature of the crime with
which he was charged when his car was towed and held pursuant
to c. 263. [557]

CIVIL ACTION commenced in the Superior Court on
November 3, 1977.

The case was heard by *Tempone*, J., a District Court
judge sitting under statutory authority.

*Bernard M. Bane*, pro se.

*Edmund C. Grant*, Assistant Corporation Counsel, for
the defendants.

PERRETTA, J. The plaintiff commenced an action under
G. L. c. 231A seeking a determination of the legality of
Boston's "tow and hold" law. St. 1929, c. 263, § 2, as most
recently amended by St. 1973, c. 253. The trial judge
dismissed the complaint which alleged that the statute

---

[1] The commissioner of traffic and parking for the city of Boston.

violates State and Federal constitutional guaranties that citizens shall have access to the courts and that their property shall not be seized without a prior judicial hearing. The statute is constitutional.

The chronology of events which Bane claims culminated in the deprivation of his constitutional rights commenced on October 3, 1977, when the Boston police department towed Bane's legally parked car[2] because it had accumulated five or more unpaid parking tickets within that calendar year.[3] The police gave Bane written notice, dated October 18, 1977, and sent by certified mail which was postmarked October 20, 1977, that his car had been towed and that it was being held because of the unpaid parking tickets. The notice further advised Bane that his car would not be released until he had paid the fees for the tickets "at the courts of issuance," as well as the storage fees and that if the car were not claimed within ten days it would be sold at a public auction or otherwise disposed of, all in accordance with G. L. c. 135, § 8.[4] The

---

[2] Because all parties concede that Bane's car was legally parked within the city when it was towed, we do not concern ourselves with the constitutional aspects of the police towing an illegally parked car. But see South Dakota v. Opperman, 428 U.S. 364 (1976).

[3] Statute 1929, c. 263, § 2, as amended through St. 1973, c. 253, provides: "[A] motor vehicle may in any calendar year, if in such year and in the calendar year immediately preceding five or more notices in the aggregate have been affixed to said vehicle as provided in said section twenty C [G. L. c. 90] and have not been disposed of, be removed to, and stored in, a convenient place in the city until all charges lawfully imposed for such removal and storage have been paid and due notice has been received that either the fines provided in such notices have been paid or security for the payment thereof has been deposited."

[4] "If such property remains unclaimed in the possession of such police department or member thereof for one month and the owner thereof or his place of abode or business is unknown, or if the owner and his place of abode or business are known and the owner, after receipt by registered mail of a written notice from such department or member to take possession of said property, refuses or fails for a period of ten days following said receipt so to do, such department may sell the same . . . by public auction, notice of the time and place of sale,

record before us is limited to Bane's civil action, and we have no knowledge of what transpired on the criminal complaints other than what Bane has alleged in his complaint. Bane alleges that on October 26, 1977, he appeared in the misdemeanor session of the Superior Court to prosecute his appeals from guilty findings on a number of parking tickets. The trial judge "ruled" that the complaints were "to be dismissed" on the understanding that Bane would acquire no further parking tickets within the next six months.[5] Five days later Bane appeared in the Municipal Court of the City of Boston to answer to his other outstanding parking violations and was found guilty. He claimed appeals to the Superior Court, and on November 3, 1977, he filed his civil complaint. While we do not know the outcome of his criminal appeals, Bane alleged in his complaint that he anticipates those parking violations would be also dismissed, "in accordance with the agreement reached on October 26, 1977." The city, pursuant to Bane's request in his civil complaint, was preliminarily enjoined from selling Bane's car, conditional upon his payment of security under Mass.R.Civ.P. 65(c), 365 Mass. 833 (1974). We have no facts concerning what may subsequently have happened to Bane's car.

Bane first argues that the seizure of his car without prior notice or a pre-seizure hearing violated the due process clause of the Fourteenth Amendment to the Federal Constitution. The city's authority to do that which Bane challenges was granted to it by St. 1929, c. 263, § 2, as amended through St. 1973, c. 253; see note 3, *supra.* This provision withstood a Federal constitutional attack from a New Hampshire resident in *Bricker* v. *Craven*, 391

---

with a description of the property to be sold, first being given by publishing the same once in each of three successive weeks in a newspaper published in such city."

[5] We understand the court's action on October 26, 1977, as described by Bane, to be that of a continuance with a dismissal after a period of time. Cf. Smith, Criminal Practice and Procedure § 728 (1970).

F. Supp. 601 (D. Mass. 1975), and while that decision construing our statute is not binding upon us, it is entitled to and accorded respect. *Commonwealth* v. *Masskow*, 362 Mass. 662, 667-668 (1972). *McIntyre* v. *Associates Financial Servs. Co.*, 367 Mass. 708, 710 n.1 (1975). Although *Bricker* involved the application of c. 263 to an out-of-State resident, the court's ruling that there is no constitutional entitlement to pre-seizure notice and hearing is equally applicable to a Massachusetts resident. *Bricker*, 391 F. Supp. at 605-606, in reliance upon *Fuentes* v. *Shevin*, 407 U.S. 67 (1972), *Mitchell* v. *W.T. Grant Co.*, 416 U.S. 600 (1974), and *Calero-Toledo* v. *Pearson Yacht Leasing Co.*, 416 U.S. 663 (1974), concluded that a valid governmental interest existed, that the procedure was reasonable with a factual basis supporting the action, and that a judicial hearing prior to a final deprivation of property was available.[6] See also *Mathews* v. *Eldridge*, 424 U.S. 319 (1976). Compare *Tedeschi* v. *Blackwood*, 410 F. Supp. 34, 44-46 (D. Conn. 1976) (a statute authorizing towing was not narrowly drawn and did not provide for a hearing at any time). Bane's only response to *Bricker* is his assertion that it is based upon an erroneous assessment of the governmental interest asserted by c. 263. While *Bricker*, 391 F. Supp. at 603, regards the situation created by scofflaws as a severe traffic problem justifying the statutory procedures, Bane perceives it as a "problemsome" but "common, everyday occurrence" requiring a pre-seizure notice and hearing. However, the fact that the traffic laws are violated with daily frequency in-

---

[6] General Laws c. 90, § 20C, requires that each ticket affixed to a car recite specific notice provisions, including, "A court hearing may be obtained upon the written request of the registered owner." To the extent that this notice does not recite that a violator may be towed and the car held in storage, "towing is sufficiently routine that the reasonable traffic violator should know that his vehicle may be towed for such reasons as parking in front of a fire hydrant or obtaining and ignoring a hundred dollars worth of parking tickets." *Bricker*, 391 F.Supp. at 605 n.7.

creases, rather than abates, the governmental interest, and we need elaborate no further. Bane's right to due process was not violated when his car was towed and held pursuant to c. 263.

Bane next advances the sweeping assertion that the rights guaranteed to him by arts. 11, 12, 14, and 30 of the Massachusetts Declaration of Rights were violated when his property was confiscated[7] without notice and a hearing. Bane's arguments in support of alleged violations of each article are repetitious. In essence he claims that he was required to purchase justice, i.e., pay the tickets or post a bond to obtain the release of his car pending his trial. This claim is based on two grounds. He first claims that the delay between the time of seizure and the time of trial on the parking violations required him to pay in advance of conviction. However, the record affords us no clue concerning the time period between the first and last of the five or more tickets which gave rise to the towing of Bane's car; it gives us no information concerning whether Bane requested a hearing pursuant to G. L. c. 90, § 20C, on any of the tickets he received. On the bare facts before us, showing a three-week time span between the seizure and the first court appearance, we will not say that Bane was denied a reasonably prompt trial or access to the courts. See *Commonwealth* v. *Beckett*, 373 Mass. 329, 332-333 (1977). The second ground argued by Bane is

---

[7] Bane contends that c. 263 is confiscatory of property (money) because it mandates the payment of towing and storage charges irrespective of whether the owner is subsequently acquitted of the parking violation. He claims this is particularly so where the owner is required to post security to obtain the release of the car pending disposition of the alleged violations because reimbursement of towing charges is optional. We do not consider that claim. Bane has no standing to argue that the statute penalizes the innocent unfortunate owner of an erroneously towed vehicle, because it does not appear from the record before us that he was ever acquitted on any of the violations, nor does he at any time allege that his car was mistakenly seized. *United States* v. *Raines*, 362 U.S. 17, 21-24 (1960). *Boston Licensing Bd.* v. *Alcoholic Beverages Control Commn.*, 367 Mass. 788, 794 (1975).

that he was penalized before conviction by the necessity that he pay the tickets or post a bond before seeking the release of his car. The Legislature has seen fit to restrict access to towed cars to those who have paid their fines or those who have provided assurance that they will pay if required to do so. We cannot say that the city must release the only security it holds, the car, prior to disposition of the tickets. Its retention of the vehicles is rationally related to its need to enforce traffic laws, and the restrictions the Legislature has placed on access to the vehicles is permissible. See *Old Colony R.R.* v. *Assessors of Boston,* 309 Mass. 439, 446-447 (1941); *Canron, Inc.* v. *Assessors of Everett,* 366 Mass. 634, 638 (1975).

Bane's claim that he was not afforded notice of the nature of the crime with which he was charged is without merit. There is neither evidence in the record nor argument by Bane that he was unaware of the nature of the charges against him at the time of his trial. As none of the tickets is in the record, we must assume that they each complied with the mandates of G. L. c. 90, § 20C. *Duffy* v. *Treasurer & Recr. Gen.,* 234 Mass. 42, 50 (1919). *General Outdoor Advertising Co.* v. *Department of Pub. Works,* 289 Mass. 149, 192 (1935). See also note 6, *supra.*

Bane's assertion that under arts. 14 and 30 his car could not be seized without a warrant is presented in the abstract, and we decline to engage in the speculation necessary to give this contention even threshold merit.

The trial judge should not have dismissed the complaint; rather, he should have made a binding declaration as to the validity of the statute. *County of Dukes County* v. *New Bedford, Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.,* 333 Mass. 405, 406 (1956). *Jewel Cos.* v. *Burlington,* 365 Mass. 274, 277 (1974). Since we have determined that the statute is constitutional, the judgment is vacated and the matter is remanded to the Superior Court for the entry of a new judgment that St. 1929, c. 263, § 2, as most recently amended by St. 1973, c. 253, is valid.

*So ordered*