EDWARD T. WALLACE & others[1] vs. BOSTON RENT BOARD
& others[2]
(and a companion case[3]).

Suffolk. March 16, 1981. — June 2, 1981.

Present: HALE, C.J., BROWN, & GREANEY, JJ.

*Rent Control*, Notice, Vacancy decontrol.

The Boston rent board's procedure for implementing decontrol of a hous-
ing unit if the unit was vacated after January 1, 1976, either voluntar-
ily or by court order, by which a tenant occupying a controlled unit at
the time the landlord seeks to decontrol it is notified of decontrol only
after the rent board's decision and therefore has no opportunity to par-
ticipate in the board's proceedings on the landlord's application, does
not deny due process to such a tenant. [14-18]

CIVIL ACTIONS commenced in the Boston Division of the
Housing Court Department on January 29, 1980, and March
24, 1980, respectively.

A motion to dismiss was heard by *Daher*, C.J.

*Russell Fanara* for Boston Rent Board.

*James J. Cotter, III*, for Edward T. Wallace & others.

*Alan P. Gottlieb* for Modern Continental Enterprises,
Inc.

*Edward Rabinovitz* for Chandler School Properties, Inc.

HALE, C.J.  By leave of a single justice of this court the
Boston rent board has appealed from an order of the Housing

---

[1] Forty-one tenants who reside in the defendant landlord's apartment
building.

[2] Modern Continental Enterprises, Inc., and Chandler School Proper-
ties, Inc., which are respectively the owner and manager of the apart-
ment building.

[3] Kim Kingry & others vs. Boston Rent Board & others.  In the com-
panion case the plaintiffs are four tenants of the apartment building re-
ferred to in notes 1 and 2, and the defendants are the Boston rent board
and the corporations referred to in n.2.  The actions were consolidated for
trial in the Housing Court.

Court of the city of Boston denying the defendant board's motion to dismiss a part of the plaintiffs' complaints. The court ruled that regulation 10 of the board's rent regulations (1976), which sets out the procedure for implementing decontrol of Boston housing from rent control, denies due process to a tenant occupying a controlled residence at the time of its decontrol. The court also ruled that the new tenants had a right to participate in the proceedings before the board and that they should have been notified of that right. The court ordered the action remanded to the board and further ordered that the board "in the future notify new tenants of their rights." The correctness of the ruling on due process is the only issue for our review as it is dispositive of the portions of the case before us.

Regulation 10 was issued pursuant to c. 15 of the Ordinances of the City of Boston (1975), the Boston rent control ordinance. Under that ordinance, if a housing accomodation within the jurisdiction of the board is vacated after January 1, 1976, either voluntarily or by court order, the housing accomodation may be decontrolled.[4] See *Church v. Boston,* 370 Mass. 598, 599 (1976). Regulation 10 provides the procedures to be followed in effecting decontrol: the landlord must file an application, accompanied by a statement that the previous tenant left voluntarily[5] or pur-

---

[4] Section 1(e) of the ordinance excludes various premises from the definition of "housing accomodations" including, in § 1(e)(vi), "units of housing accomodations which become vacant on or after January 1, 1976, *or* which are vacated voluntarily or pursuant to court order anytime thereafter" (emphasis supplied). Section 1 of regulation 10 construes the emphasized word of the ordinance to mean "and." *Central Trust Co.* v. *Howard,* 275 Mass. 153, 158 (1931). We likewise interpret the ordinance as it would undercut the purpose of the voluntary vacancy and court order provisions to do otherwise.

[5] Section 3 of the regulation sets out the following definition of an "involuntary vacancy": "Involuntary vacancy includes, without limitation, the following conduct by the owner directed towards the legal occupant:

1) harrassment, coercive or forcible conduct;
2) unreasonable interruption of heat, utilities or other essential housing services;

suant to a court order.  The board then must send notice to the former tenant of the application and supporting statement and inform the former tenant of the right to submit evidence or argument opposing the application within ten days after receipt of notice.  The board may conduct an investigation into the facts alleged in the application and require the landlord to submit further facts and evidence. The regulation makes no provision for notifying the present tenant (hereinafter the new tenant) of the application, but does provide that "any party" may supply information and argument to the board within ten days of the filing of the application.  If the board finds that there is probable cause to believe that the housing accomodation may not have been vacated voluntarily or pursuant to a court order, the board may order a hearing.  The burden of proof is on the

3) demanding rent in excess of the legal maximum rent;
4) locking the legal occupant out of the housing accommodation;
5) threatening legal occupant;
6) failure of the owner during the tenancy of the legal occupant to remove code violations that materially impair health and safety or to perform ordinary and necessary repairs or maintenance;
7) fraud or misrepresentation by the owner directed toward the legal occupant includes, without limitation, knowingly causing the legal occupant to believe that the legal occupant will remain under the protection of the board if the legal occupant moves; or making false statements about the rights and obligations of the legal occupant under the Ordinance or this regulation;
8) eviction or termination of tenancy of the legal occupant by the owner without following the proper lawful procedure.  Proper lawful procedure shall include, without limitation, the presentation of the rights under the Ordinance to the legal occupant on an approved form (E.O.) or a written notice containing the language from paragraph 'Important Information to Tenant Regarding Vacancy Decontrol' on the form (E.O.);
9) vacating of a housing accommodation by the legal occupant because of the owner's breach of covenant of quiet enjoyment or warranty of habitability;
10) any other just cause.

B. Definition of Involuntary Vacancy:  the vacating of a housing accomodation by the legal occupant due to a fire or other natural disaster."

landlord throughout the application process. Following these proceedings the board is required to send notice of its decision to the landlord and the new tenant, and to any other interested parties. The notice must state reasons for the decision and that the decision may be appealed to the District Court[6] or to the Housing Court.[7]

The plaintiffs in both actions are tenants residing in the defendant landlord's apartment building. In November, 1979, the landlord applied to the board for the vacancy decontrol of the plaintiffs' apartments. The board did not give notice of the filing to the then current occupants, the plaintiffs. The plaintiffs in one of the actions became aware of the filing and sought, and obtained, a hearing on the applications concerning them. The plaintiffs in the other action apparently knew nothing of the applications until they received notice of their approval and of the issuance of certificates of vacancy decontrol. These actions were timely entered in the Housing Court.[8]

The Housing Court based its ruling that the regulation 10 procedure did not afford due process on the absence of a provision for notice to the new tenant and an opportunity for the new tenant to participate in the board's proceedings as to whether a decontrol certificate should issue.

To invoke the rights under due process principles,[9] a party must establish the existence of a protected interest. The plaintiffs claim that they have a protected "property" in-

---

[6] See St. 1969, c. 797.

[7] See G. L. c. 185C, § 3.

[8] While ordinarily the proper route to follow for a tenant who wishes to contest the validity of a decontrol order would be to seek reconsideration by the board (see § 17 of regulation 10), where the board has, as in this case, advised the tenants in the notice of decontrol that their remedy is in the courts, the seeking of a reconsideration by the board is not a condition to pursuit of relief in the courts.

[9] The plaintiffs' complaints present claims of due process and equal protection violations under the United States Constitution and the Massachusetts Declaration of Rights. The parties have not argued the equal protection claims on appeal, and we deem them abandoned.

terest under the Boston rent control ordinance.[10] Their argument is based on the provision that a rented unit continues to be controlled, despite a change in occupancy after January 1, 1976, until a certificate of decontrol is issued. That argument overlooks the fact that after January 1, 1976, any person commencing a tenancy in Boston was on at least constructive notice (see *Parsons* v. *Lenox*, 228 Mass. 231, 235 [1917]; *National Fireproofing Co.* v. *Kelley*, 253 Mass. 344, 345-346 [1925]) that the premises could be decontrolled, which event he could not prevent except in unusual circumstances, i.e. forced or constructive eviction of the prior tenant (see n.5).[11] The plaintiffs were not warranted in expecting to be protected by rent control. See *Lotto* v. *Commonwealth*, 369 Mass. 775, 778 (1976); *Regents of State Colleges* v. *Roth*, 408 U.S. 564, 578 (1972). The temporary existence of rent control protections following a vacancy does not give rise to an entitlement to continuing protection. That temporary continuance of controls is to maintain the controlled rent in effect while the board carries on its responsibilities of administrative oversight of the decontrol process. The reason for the exercise of such administrative oversight is to remove any incentive a landlord might have to cause or create a vacancy by improper means in order to secure the decontrol of the rental unit. Whatever benefit the new tenant derives from the delay is in the nature of a windfall.

Even if we assume that the plaintiffs have a protected interest, their claim, nonetheless, fails, as the process set out by regulation 10 adequately protects such an interest. Consideration of what constitutes due process involves weighing of competing interests. *Lotto, supra* at 780. See *Mathews*

---

[10] See *515 Associates* v. *Newark*, 424 F. Supp. 984, 993 (D. N.J. 1977); *Argo* v. *Hills*, 425 F. Supp. 151, 158 (E.D. N.Y. 1977), aff'd, 578 F. 2d 1366 (2d Cir. 1978); *Gramercy Spire Tenants' Assn.* v. *Harris*, 446 F. Supp. 814, 823-824 (S.D. N.Y. 1977); *Snyder* v. *Axelrod Management Co.*, 471 F. Supp. 308, 314 (S.D. N.Y. 1979).

[11] None of the plaintiffs claims to have been a legal occupant of the premises prior to January 1, 1976.

v. *Eldridge,* 424 U.S. 319, 334-335 (1976). Although the tenants are not given notice of the application and the pending administrative review, they are notified of the board's decision and are informed that it may be appealed to named courts. The practice in the Housing Court is to review decontrol proceedings de novo. See e.g., Levenson *vs.* Boston Rent Control Administration, Boston Housing Court Department, CA 5671 (1977) (order); Massik *vs.* Boston Rent Control Administration, Boston Housing Court Department, CA 9471 (1980) (judgment). See, also, *Gentile* v. *Rent Control Bd. of Somerville,* 365 Mass. 343, 348-349 (1974). Any rent increase resulting from an improper decontrol would have impact on the tenant only after notice under G. L. c. 186, § 12 (as amended through St. 1979, c. 251), and can be remedied promptly, simply and completely through the available judicial review following the administrative determination. See *Mackey* v. *Montrym,* 443 U.S. 1, 12 (1979). Compare *Bane* v. *Boston,* 8 Mass. App. Ct. 552, 556 (1979). Should hardship arise because of the time required in the appeal process, the order of the board may be stayed. See c. 15, § 11, of the Ordinances of the City of Boston (1975). We doubt that resort to judicial review will often be required. The board is a neutral body with expertise in the area and the power to conduct investigations and hold hearings. It can be expected to be reasonably accurate in its determinations, and to uncover most, if not all, of those few cases in which a rental unit has been involuntarily vacated. See *Mackey, supra* at 13. Finally, we observe that the present procedure serves the public interest (as defined by the enabling act for the Boston rent control scheme, St. 1970, c. 863, § 1) by withdrawing the governmental intrusion into the rental housing market as soon as possible after the emergency conditions which created the need for it have ceased (St. 1970, c. 863, § 2), while also preserving order in the market (see *Russell* v. *Treasurer & Recr. Gen.,* 331 Mass. 501, 508 [1954]), and simultaneously protecting tenants accustomed to the protections of rent control from undue pressure to vacate.

The orders are reversed. The cases are remanded to the Housing Court for consideration of the plaintiffs' other claims.

*So ordered.*