James SUTTON, Jr., et al.,
Plaintiffs-Appellees,

v.

CITY OF MILWAUKEE, et al.,
Defendants-Appellants.

No. 81-2518.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 11, 1982.

Decided March 18, 1982.

Rehearing and Rehearing En Banc
Denied June 24, 1982.

Thomas E. Hayes, Deputy City Atty., Linda Uliss Burke, Asst. City Atty., Milwaukee, Wis., for appellant.

Lawrence G. Albrecht, Legal Action of Wisconsin, Inc., Milwaukee, Wis., for appellee.

Before CUDAHY and POSNER, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

POSNER, Circuit Judge.

This class action under 42 U.S.C. § 1983 alleges that various Wisconsin statutes and Milwaukee ordinances relating to the towing, storage, and disposal of abandoned cars and illegally parked cars violate the due process and equal protection clauses of the Fourteenth Amendment. The district judge granted broad injunctive relief in favor of the class, 521 F.Supp. 733 (E.D.Wis. 1981), and the city and state appeal. Because the appellants are no longer contesting the injunction insofar as it relates to abandoned cars, the only question on appeal is whether the judge should have enjoined the statute and ordinance relating to illegally parked cars. The statute, Wis.Stat.

§ 349.13, authorizes traffic officers to direct the removal (towing) of any illegally parked car, at the owner's expense, to a parking garage or other storage premises. The ordinance, Milwaukee Code of Ordinances § 101–25(1), similarly authorizes traffic officers to remove cars parked in violation of the parking ordinances in the Code, and specifies a $50 charge for removal and storage. Neither the statute nor the ordinance makes any provision for notice or hearing in advance of removal.

The district judge held that, with respect to the towing of illegally parked cars under "emergency" conditions, the Constitution does not entitle the car's owner to be notified that his car is going to be towed or to an opportunity for a hearing before the car is towed. All that he is entitled to is prompt notice and opportunity to be heard after the car has been towed. The parties, at the judge's urging, have worked out a set of post-towing procedures for notice (by mail, within 24 hours of the tow) and hearing (informal, by the prosecution division of the city attorney's office within one business day, with *de novo* review of the division's determination of probable cause available at the next regular session of the municipal court). The parties have stipulated that these procedures are constitutionally adequate for emergency tows and the judge has approved the stipulation. Hence there is no issue before us regarding the towing of illegally parked cars in emergencies. The parties seem also to have agreed that if we should hold, contrary to the district court, that the Constitution does not require pre-towing notice and opportunity to be heard with regard to illegally parked cars in nonemergency situations, the stipulated post-towing procedures for emergency tows will simply be extended to nonemergency tows.

■ This narrows the issue to whether it is unconstitutional for the state or city to tow an illegally parked car without first giving the owner notice and opportunity to be heard, unless the illegally parked car is blocking traffic or otherwise creating an emergency. The district judge held that it is unconstitutional, and if we uphold him on this point that disposes of the appeal. But if we reject the district judge's holding we must then decide a second issue: whether it is constitutional to limit towing in nonemergency situations to illegally parked cars whose owners have at least two unpaid traffic or parking tickets—for that is Milwaukee's enforcement policy.

■ Since a person's car is property, the state may not deprive him of it without due process of law; and the deprivation need not be permanent to be actionable. See, e.g., *Lee v. Thornton*, 538 F.2d 27, 32–33 (2d Cir. 1976). Thus the precise question we must decide is whether it is a denial of due process to tow a person's illegally parked car without giving him notice and an opportunity to be heard before the car is towed. The question is one of first impression at the federal appellate level. *Stypmann v. City & County of San Francisco*, 557 F.2d 1338 (9th Cir. 1977), much cited by the appellees, dealt only with post-towing procedures (see *id.* at 1340, 1342), a matter not before us. Two state appellate courts have passed on the issue and upheld the constitutionality of the practice. See *Baker v. City of Iowa City*, 260 N.W.2d 427 (Iowa 1977); *Bane v. City of Boston*, 396 N.E.2d 155, 156–57 (Mass.App.1979).

The starting point for our analysis is *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), where the Supreme Court announced a simple cost-benefit test of general applicability for deciding whether due process requires notice and hearing before government may deprive a person of property. See Mashaw, *The Supreme Court's Due Process Calculus for Administrative Adjudication in Mathews v. Eldridge: Three Factors in Search of a Theory of Value*, 44 U.Chi.L.Rev. 28, 46–48 (1976). See also *Frost v. Weinberger*, 515 F.2d 57, 66 (2d Cir. 1975), where Judge Friendly proposed a similar test, anticipating *Mathews*. The *Frost* and *Mathews* tests require comparing the benefit of the procedural safeguard sought, which is a function of the value of the property interest at stake and the probability of erroneous deprivations if the safeguard is not provided, with the cost of the safeguard. The benefit of the safeguard can be thought of as the product of multiplying the value of the property interest by the probability that that value will be destroyed by a government error if the safeguard is not provided. Quantification will rarely be possible but expressing mathematically the relationship between the value of the interest and the probability of its erroneous destruction may assist in thinking about the tests—which, being general, are as applicable to the towing of automobiles as to the

termination or reduction of social security benefits as in *Mathews* and *Frost.*

On the benefit side of the ledger in this case, the first thing to be noted is that the property interest is a slight one. It is not the car itself but the use of the car for a short period, usually a few hours, that is at stake. At oral argument we were told about a man whose car was towed and then misplaced by the authorities so that it took him two months to get it back. That was a substantial deprivation but it was not the result of failing to provide notice and an opportunity to be heard in advance of being towed, for there is no suggestion that the car was not illegally parked; it was a result of inadequate post-towing procedures, and these inadequacies have been cured by the stipulation.

Second, the additional safeguard of pre-towing notice and opportunity to be heard is not required in this case to prevent frequent errors. The determination that a car is illegally parked is pretty cut and dried. Police officers make mistakes, of course, but in giving out parking tickets not very many—far fewer than in the case of moving violations. Rarely would a car's owner be able to convince an impartial arbiter that his car really was not illegally parked and so should not be towed; few would be the occasions, therefore, when notice and an opportunity to be heard in advance of towing would prevent an unjust deprivation of a property interest. Since the procedural safeguard sought here would avert few errors, and those of small magnitude in terms of the cost to the car's owner, the benefits of the safeguard would be very small.

We turn to the costs of the safeguard. They are not in this case limited, as one might expect, to the expense of notice and hearing. Cf. *Frost, supra,* 515 F.2d at 67. There is no way that the city or state can notify the owners of illegally parked cars that their cars will be towed and provide them then and there with an opportunity to challenge the lawfulness of the towing. To require notice and hearing in advance is, as the appellees concede, to prevent all towing of illegally parked cars.

The cost of notice and hearing is therefore the cost of abandoning towing as a method of dealing with illegal parking. It is clearly prohibitive, as the district judge recognized, when the illegally parked car is blocking traffic or otherwise causing an emergency, for in that case there is no feasible alternative to towing. When the illegally parked car is not creating an emergency in this sense, the benefits of towing are less. This is by definition: the term "emergency" is a shorthand expression for situations where towing is the only solution to the problem created by an illegally parked car. But we are not prepared to say that the benefits of towing are negligible in the nonemergency case. Parking regulations have a valid purpose; and not only does towing implement the regulations directly, by removing cars parked in violation of them, but the threat of towing deters violations, as every driver knows. Of course there are alternative methods of deterrence, such as heavy fines for illegal parking. But that is equally true with regard to parking violations that create emergencies: they too could be punished more heavily than they are, and there would then be less need for towing. State and municipal traffic officials, who know much more about these matters than federal judges do, have decided that towing is more effective in dealing with parking violations of all kinds than just jacking up the fines further would be, and we cannot say that this judgment is not a reasonable one.

We conclude that the benefits of towing illegally parked cars even when they are not creating an emergency—benefits that would be sacrificed by requiring notice and an opportunity to be heard in advance of towing—outweigh the very modest costs entailed by forgoing procedural safeguards that would be merely additive to the post-towing procedural safeguards to which the parties have stipulated. We hold, therefore, that it is not a violation of the due process clause to tow an illegally parked car without first giving the owner notice and an opportunity to be heard with respect to the lawfulness of the tow.

Considerations of administrability also support this result. The district judge's approach makes "emergency" a term of constitutional art, yet the word lacks a simple and well-understood meaning in the context of automobile parking. The judge tried to divide Milwaukee's parking ordinances into emergency and non-emergency regulations but this resulted in such anomalies as treating parking in front of a private driveway as an emergency but not parking in a loading zone. This may have been what led the judge to state that "it is not possible here to say that every violation of a particular ordinance is either always an emergency that permits a tow without a prior hearing or always a non-emergency

that makes such a tow constitutionally impermissible. The guiding principle must always be whether or not the vehicle, as it stands, jeopardizes public safety by either creating an unsafe condition or significantly hindering the efficient movement of traffic." 521 F.Supp. at 741. This we think is too vague. Either the entire municipal parking code would have to be rewritten to particularize this standard or traffic officers would have to make on-the-spot constitutional judgments without adequate guidance. In either case the burdens on local officials would be disproportionate to the very limited interests at stake.

Our holding is not inconsistent with *Graff v. Nicholl*, 370 F.Supp. 974 (N.D.Ill.1974), a three-judge district court decision in this circuit which holds that notice and an opportunity to be heard are required before an abandoned car may be towed. Advance notice is feasible in the case of abandoned cars because they are not about to be moved by their owners—that is, of course, the very reason why the authorities take an interest in abandoned vehicles. The appellants told us at oral argument that the reason they have withdrawn their appeal from the part of the district judge's injunction that requires notice before towing an abandoned car is that they decided it would not be difficult to comply with. But advance notice is infeasible in the case of an illegally parked car; the car will be gone by the time the owner is notified, no matter how efficient the notification process is.

The appellees rely heavily on the statement in *Fuentes v. Shevin*, 407 U.S. 67, 90, 92 S.Ct. 1983, 1999, 32 L.Ed.2d 556 (1972), that the situations in which property may be seized without advance notice and an opportunity to be heard "must truly be unusual." But *Fuentes* involved summary repossession by installment creditors rather than the enforcement of parking regulations, and we think the Supreme Court would be surprised to find that by using the quoted language it had outlawed the towing of illegally parked cars except in emergency situations. A subsequent Supreme Court decision, *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 679–80, 94 S.Ct. 2080, 2089–90, 40 L.Ed.2d 452 (1974), held that it was constitutional to seize, without prior notice or opportunity to be heard, a boat that was suspected of carrying contraband. The Court distinguished *Fuentes* on two grounds: the seizure was initiated by the public authorities to serve important regulatory interests, and advance warning would have enabled removal of the property from the reach of the authorities. Both of these factors are present in this case as well.

All this assumes that *Fuentes* is still good law. The author of the Court's opinion in *Fuentes* has said that *Mitchell v. W. T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974), decided two years before *Mathews*, overruled *Fuentes*. See 416 U.S. at 634, 94 S.Ct. at 1913 (Stewart, J., dissenting). However this may be, the cost-benefit approach of *Mathews*, being a more recent expression of the Supreme Court's view of due process, must be taken to supersede *Fuentes* to the extent that the two decisions are inconsistent.

■ It remains to consider whether the city's announced policy of towing only those illegally parked vehicles (unless they are creating an emergency) whose owners have two or more unpaid traffic or parking tickets violates due process or equal protection. The district judge did not have to decide this question because the injunction he issued had the effect of preventing the city from towing any illegally parked cars other than in emergency situations, to which the policy is inapplicable. But he clearly disapproved of the policy. He said it amounted to holding a car for "ransom" and could force the owner to pay much more than the $50 towing and storage charge to get his car back because the police would not release it until he paid the unpaid tickets. 521 F.Supp. at 742.

We do not find the ransom analogy *apropos* to our consideration, because it relates to post-towing rather than pre-towing questions and they are not before us. Whether the police can refuse to release your car if you do not pay all of your outstanding traffic and parking fines depends on the procedures for getting the car back after it has been towed. Those procedures have been stipulated by the parties to this lawsuit and include, incidentally, a provision that "Prior payment of other parking citations shall not be a precondition for release of the vehicle."

Ransom aside, a municipal policy of towing illegally parked cars in nonemergency situations only if the owner has two or more unpaid tickets might be thought to violate the Constitution in either of two ways. First, whereas a policy of towing all illegally parked cars would, as we said earli-

er, confer substantial benefits that help save the policy from condemnation on due process grounds, the benefits are smaller if the city only bothers to tow illegally parked cars when the owner has unpaid tickets, and maybe the benefits are zero—maybe the city does not actually care if cars are parked illegally but just uses the threat of towing to increase its revenue from traffic and parking fines. Second, the policy could rest on a distinction so irrational as to violate the equal protection clause of the Fourteenth Amendment.

We do not think the enforcement policy shows that the towing of illegally parked cars has no benefits. The police have limited resources to devote to preventing violations of parking regulations; this is a fact of life concerning municipal finances and not a confession that parking regulations serve trivial social objectives. The police must allocate these resources somehow and a sensible method is to concentrate on repeat offenders. By towing the illegally parked cars of people with more than one unpaid ticket the police enforce the parking regulations most severely against those who flout them most audaciously. The sense of justice is not outraged. The two state appellate courts that have passed on the constitutionality of towing illegally parked cars without advance notice or opportunity to be heard thought it an additional argument in favor of the challenged municipal policies that, like Milwaukee's, they focused on scofflaws. See *Baker, supra,* 260 N.W.2d at 431; *Bane, supra,* 396 N.E.2d at 157.

This case is thus unlike *United States v. Vertol H21C,* 545 F.2d 648, 651 (9th Cir. 1976). There a helicopter was seized to coerce payment of a debt to the government. The helicopter was not illegally "parked," a menace to public safety, or otherwise "in the way" of some valid government project; it really was a hostage. The Milwaukee police do not seize a person's legally parked car in order to make him pay off his prior unpaid parking tickets, a practice that would be analogous to the one condemned in *Vertol*; they tow only illegally parked cars. Perhaps if their only motive in towing such cars were to increase the city's revenues from parking tickets—if they had no interest at all in preventing or rectifying illegal parking—the case would be like *Vertol* and we would have to decide whether towing is a constitutionally permissible device for collecting a pure revenue tax disguised as a fine for illegal parking. But that cannot be the

appellants' sole motive (and the district judge did not suggest it was); if it were, they would not have agreed to the stipulated provision, quoted above, allowing the owner to reclaim his car without paying off his unpaid parking tickets, without seeking an appellate review of the question.

There is no violation of equal protection either: it is not invidious or irrational to tow the illegally parked cars of third offenders before those of first or second offenders.

Since we find no constitutional infirmity in towing illegally parked cars without notice or an opportunity to be heard before the car is towed, or in using the incidence of unpaid traffic and parking tickets to ration the limited police resources available for towing, we reverse the judgment of the district court and remand the case for further proceedings consistent with this opinion. We emphasize, however, our understanding that the appellants have agreed to extend the post-towing procedures agreed upon for emergency tows to nonemergency tows in the event that, as we hold today, they may tow illegally parked cars in nonemergency situations without advance notice and opportunity to be heard. If our understanding is incorrect, the district judge may on remand decree appropriate post-towing procedural safeguards for nonemergency tows. Obviously some such safeguards are constitutionally required. It is for the district judge in the first instance to decide which, if contrary to our understanding the parties have not yet agreed on them.

REVERSED AND REMANDED.

ON REHEARING

■ The State of Wisconsin has petitioned for rehearing with respect to the issue, not discussed in our opinion, whether the state statutes, Wis.Stat. §§ 342.20 and 349.13(3), that authorize towing are unconstitutional on their face because they do not require the city officers who do the actual towing to comply with any procedural safeguards, either pre-towing or post-towing, or whether they are merely enabling legislation. The district court's judgment contains a declaration that the statutes are unconstitutional. But the state was not a party in the district court. It intervened in the appeal pursuant to 28 U.S.C. § 2403(b) and filed a brief, but it did not participate in the oral argument, and we formed the impression, evidently erroneously, that the

constitutionality of the state statutes was no longer an issue in the case.

As we have reversed the judgment of the district court, the declaration that the state objects to has been vacated. Of course the plaintiffs may move to reinstate it. But it is not certain that they will. They have not previously sought any relief against the state, which as mentioned was not a party to the district court proceedings; and since all the towing that is done in Milwaukee is done by city rather than state officers, it is far from clear that there is an actual controversy between the plaintiffs and the state regarding the subject matter of this lawsuit. We are naturally reluctant, to say the least, to address a constitutional question that may be academic.

If the plaintiffs do move the court below to reinstate its declaration that the state statutes are unconstitutional, the state will be entitled to intervene in the district court proceedings under 28 U.S.C. § 2403(b), and that court can then decide whether there is an actual controversy between the plaintiffs and the state and, if so, whether the declaration should be reinstated in light of the principles stated in our opinion.

Except for this clarification, the state's petition for rehearing is denied. The plaintiffs' petition for rehearing with suggestion for rehearing *en banc* has already been denied, the members of the panel having voted unanimously to deny it and no judge in active service having requested a vote on the suggestion.