**John Charles BINS, Plaintiff,**

**v.**

**Richard E. ARTISON, Sheriff of Milwaukee County, et al., Defendants.**

**No. 88–C–636.**

United States District Court, E.D. Wisconsin.

Sept. 11, 1989.

Belongia & Associates by Aaron Belongia, Elm Grove, Wis., for plaintiff.

Mary Ellen Poulos, Asst. Corp. Counsel, Milwaukee County, Milwaukee, for Artison and Pinter.

Riordan, Crivello, Carlson & Mentkowski by Patrick W. Brennan, Milwaukee, for Casper & Powell's Towing Service.

## DECISION and ORDER

MYRON L. GORDON, Senior District Judge.

In this action, brought pursuant to 42 U.S.C. § 1983, the plaintiff, John Bins, has alleged that the defendants violated his fourteenth amendment right to due process when they seized a race car belonging to him in the course of executing a judgment against other parties in an unrelated case. The case was tried to the court during the week of July 10, 1989. On July 14, 1989 the court ruled in favor of the plaintiff on the liability of the defendants Sheriff Richard E. Artison and Deputy Sheriff James Pinter. The court reserved its ruling on the issues of the liability of defendants Jerome Casper and Rowell's Towing Service, as well as the amount of damages. The liability issue will be decided in favor of the plaintiff and the court will award damages to John Bins in the amount of $6,600.00, plus costs and reasonable attorney's fees, against Messrs. Artison, Pinter, Casper, and Rowell's Towing Service.

## FINDINGS OF FACT

In 1971, the plaintiff's father, Norbert Bins, the sole proprietor of Norbert Bins Garage, purchased a 1968 Ford Falcon sedan and agreed to finance its conversion into a race car. The car was extensively modified in preparation for racing on the "pro-stock race circuit." The conversion included modification of the frame, and the replacement of the engine mounts. It also included the installation of a 427 cubic inch single overhead cam engine with teflon pistons and two Holly carburetors, a B & M clutch flight racing transmission, a special racing suspension and racing tires. In a quarter mile race the car could attain speeds of over 140 miles per hour.

The car was raced throughout the country in the early seventies. John Grey was the race driver and Robert Bins, another son of Norbert Bins, was the mechanic. In

the mid-seventies the racing ended, and the car was put into storage for eight years.

The car was carefully prepared for storage: a custom cover was made, mechanical parts were oiled to avoid rust, and the tires were raised off the ground. Spare parts, including a second engine, were placed in the trunk and in the back seat area. The credible evidence supports a finding that the car was stored in good condition. The evidence also supports a finding that the car emerged from more than eight years of storage in good condition.

In 1979, Norbert Bins retired and gave his entire business including the race car to his son, John Bins, who is the plaintiff in this action. In August 1986, John Bins asked John Grey to inventory the parts and prepare the car for sale. For these restricted purposes, the car was taken to John Grey's house.

On October 6, 1986, Deputy Sheriff James Pinter went to Mr. Grey's house to execute a judgment against Mr. Grey and Robert Bins. Mr. Grey was not at home. Deputy Pinter asked Mr. Grey's wife if Mr. Grey owned the race car; Mrs. Grey stated that she did not know who owned the car. Deputy Pinter was also informed by officials of the Wisconsin Department of Transportation that the race car was not registered. The court concludes that without ever ascertaining the correct ownership of the race car, Deputy Pinter called for a tow truck. Jerome Casper, a private tow truck operator, arrived and at Deputy Pinter's direction towed the race car away.

The race car was towed to Rowell's Towing Service's place of business with directions that it be held for sale by the sheriff. However, the direction to sell the car was cancelled, and Rowell's Towing Service was informed that the car could be released to John Bins. Rowell's Towing Service refused to release the car until its towing and storage fees (over $400.00) were paid; the plaintiff declined to pay such fees. The car was subsequently sold to a third party for $420.00

## ANALYSIS

The plaintiff's race car is property within the meaning of the due process clause of the fourteenth amendment. *Miller v. City of Chicago*, 774 F.2d 188, 192 (7th Cir. 1985); *Frier v. City of Vandalia*, 770 F.2d 699, 701 (7th Cir.1985). Consequently, the plaintiff may not be deprived of the race car under color of state law unless he is afforded due process.

As a preliminary matter, the court determines that each of the defendants acted under color of state law in seizing the plaintiff's race car. *Papapetropoulous v. Milwaukee Transport Services*, 795 F.2d 591, 594 (7th Cir.1986). The sheriff acted under color of state law in establishing the policies and procedures that led to the seizure of the plaintiff's property. In carrying out those procedures, Deputy Pinter also acted under color of state law.

■ Jerome Casper and Rowell's Towing Service are private parties. I find that they acted as agents of the sheriff; as such they acted under color of state law. *Soffer v. City of Costa Mesa*, 798 F.2d 361, 364 (9th Cir.1986); *Coleman v. Turpen*, 697 F.2d 1341 (10th Cir.1983); *Goichman v. Rheuban Motors*, 682 F.2d 1320 (9th Cir. 1982). That these private defendants exercised no discretion and simply followed the orders of a deputy sheriff does not affect the "under color of state law" character of their agency. *Goichman, supra*, 682 F.2d at 1322. Thus, the actions of Mr. Casper and Rowell's Towing Service are subject to § 1983 liability.

There can be no dispute that the seizure of the plaintiff's car constituted a deprivation of property requiring due process. *Sutton v. City of Milwaukee*, 672 F.2d 644 (7th Cir.1982). Thus, the questions are what process was due and whether it was provided.

■ The defendants argue that under the facts of this case, due process only requires the availability of post-deprivation state law remedies. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Wolf–Lillie v. Sonquist*, 699 F.2d 864 (7th Cir.1983). Such a due process standard applies only in cases where the actions of the state actor are random and

unauthorized. *Wilson v. Civil Town of Clayton*, 839 F.2d 375, 381 (7th Cir.1988). However, the actions of Deputy Pinter were not random and were authorized by the policy and procedures established by the sheriff. The plaintiff has challenged "an inadequate 'established state procedure' that destroys his entitlement without according him proper procedural safeguards." *Easter House v. Felder*, 879 F.2d 1458, 1467 (7th Cir.1989). *See also Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982).

Sheriff Artison had promulgated a written two page set of guidelines governing the execution of judgments by deputy sheriffs. The document, entitled "Policy and Procedure—Executions," vests the deputy sheriff with the discretion of granting a three to five day "courtesy" period after making a demand for satisfaction of the judgment in order to reach an "amicable solution." If the deputy concludes that the debtor might conceal the property, he may seize the property immediately. The policy provides no guidelines or procedures for how to determine the ownership of property prior to seizure. Further, if someone else's property is seized, the policy does not include provisions or process by which a claimant is tendered an opportunity for a post-deprivation hearing.

It may indeed be necessary to give the deputy sheriff the discretion to deny a debtor the three to five day courtesy period in order to avoid concealment of property. However, in such a circumstance, it becomes important to have established reliable procedures for the verification of ownership prior to seizure. In this regard Sheriff Artison failed to provide guidance to his officers.

Deputy Pinter testified that it was the practice of department personnel to obtain ownership information from the Division of Motor Vehicles of the Wisconsin Department of Transportation. However, such information is only available for automobiles that are actually registered. Vehicles not used on the public roadways of the state, such as race cars, are not required to be registered. Thus, following department

practice, Deputy Pinter failed to establish the ownership of the race car prior to seizing it.

The en banc decision in *Easter House* was made on July 11, 1989—just three days before the completion of the trial in the instant case. Without my being aware of *Easter House,* I alluded to the position of Deputy Pinter in the governmental hierarchy. The holding of *Easter House* makes clear that an employee's position in the governmental hierarchy does not constitute the basis for an exception to *Parratt v. Taylor* when the actions of the state employee, however high ranking, are in fact random and unauthorized from the state's perspective. Nevertheless, *Easter House* affirms the view that an employee's hierarchical position is relevant to whether an employee "establishes policy and procedure on an informal basis without the aid of formal policy and procedure guidelines, i.e., decides policy on a case by case basis." 879 F.2d at 1472. Deputy Pinter followed department procedures to the extent they existed; nevertheless, he seized property that did not belong to John Grey or to Robert Bins. He acted in conformity with discretion given to him by departmental procedures and, as such, his actions became departmental policy in the context of the specific case at bar.

■ Given the shortcomings of the established procedure described above, the improper seizure of the plaintiff's race car was sufficiently foreseeable so that it was incumbent upon Sheriff Artison to provide the plaintiff with a post-deprivation hearing. This was not done; rather, after it was discovered that the car did not belong to John Grey or to Robert Bins, Rowell's Towing refused to release the vehicle to the rightful owner unless he paid the towing and storage fees. In *Frier*, Judge Easterbrook wrote:

> *Sutton v. City of Milwaukee*, 672 F.2d 644 (7th Cir.1982), holds that a hearing is not necessary before the police tow a car but suggests that one must be furnished promptly after the tow. *Sutton* also suggests, in line with many other cases, that the City must establish the process

and tender an opportunity for a hearing; it may not sit back and wait for the aggrieved person to file a suit.

*Frier, supra,* 770 F.2d at 701.

In other words, even if *Parratt v. Taylor* were applied to the case at bar, the transgression of an improper seizure of property under these facts is sufficiently foreseeable to have required the state to have made a post-seizure remedy available to the victim. This is not accomplished by requiring the victim to pay towing and storage charges or, alternatively, to commence a state law suit.

■■■ Under these facts the defense of qualified immunity is unavailable to Sheriff Artison and Deputy Pinter. "[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Sheriff Artison committed no discretionary act, rather, he established an inadequate policy and procedure. Deputy Pinter failed to determine that John Grey or Robert Bins, the subjects of the writ, owned the race car; he nevertheless used his discretion to seize the car immediately without granting the "courtesy" waiting period. The discretionary actions of Deputy Pinter violated the clearly established constitutional right of the plaintiff not to be deprived of property under color of state law without due process of law. *See Rakovich v. Wade,* 850 F.2d 1180, 1204–05 (7th Cir. 1988).

## DAMAGES

The plaintiff alleges that the race car had a value of $35,000.00 and seeks punitive damages in the amount of $1,000,-000.00. The court finds that the plaintiff proved damages in the amount of $6,600.00 and is not entitled to punitive damages.

■■ The plaintiff points to a newspaper advertisement for the sale of a similar race car to support his claim that the car was worth $35,000.00. The court concludes that such a basis for determining value is far too speculative.

The race car was eventually sold for $420.00 by Rowell's Towing Service for towing and storage fees. The buyer of the car testified that the car he purchased on January 14, 1987, was junk. It had no second engine, and most of the front suspension was missing, as was the steering linkage.

Mr. Prietzel, an expert witness for the defendants, testified that he saw the race car briefly while it was in storage at Rowell's Towing Service. He testified that the overhead single cam engine was disassembled and that a cam was missing. He also testified that there were some parts in the back seat, but he did not look in the trunk. Mr. Prietzel, who was a former employee of Rowell's, concluded that the car was worth no more than $1,000.00 at the time he saw it.

The two photographs taken just prior to seizure indicate that the car was in good condition. There was also credible testimony that a used block for an engine of the type utilized in the race car sold for $2,800.00. I find that there were two engines in the car at the time of seizure and conclude that each was worth $2,800.00. Based on the testimony of the defendants' expert, I find that the car itself was worth $1,000, exclusive of the two engines referred to above. The court concludes that $6,600.00 was the value of the race car at the time of seizure.

Therefore, IT IS ORDERED that the clerk of this court enter judgment in favor of the plaintiff and against each of the defendants, Sheriff Artison, Deputy Pinter, Jerome Casper, and Rowell's Towing Service, jointly and severally, in the amount of $6,600.00 plus costs and reasonable attorneys fees. The plaintiff may serve and file an application for reasonable attorney's fees within ten days of the date of this decision and order. The defendants will be allowed 10 business days from the date of the filing of the plaintiff's application to file and serve objections, if any, concerning

the reasonableness of the requested amount.